IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

**FILED**

**February 11, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-1403

STEVEN O. DALE, ACTING COMMISSIONER OF THE
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Petitioner Below, Petitioner

v.

JAMES A. ODUM,
Respondent Below, Respondent

Appeal from the Circuit Court of Kanawha County
Honorable Louis H. Bloom, Judge
Civil Action No. 12-AA-12

REVERSED AND REMANDED WITH DIRECTIONS

AND

No. 12-1509

STEVEN O. DALE, ACTING COMMISSIONER OF THE
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Petitioner Below, Petitioner

v.

CHAD DOYLE,
Respondent Below, Respondent

Appeal from the Circuit Court of Kanawha County
Honorable Louis H. Bloom, Judge
Civil Action No. 12-AA-6

REVERSED AND REMANDED WITH DIRECTIONS

Submitted: January 14, 2014
Filed: February 11, 2014

Patrick Morrisey, Esq.                     Randy D. Hoover, Esq.
Attorney General                           Beckley, West Virginia
Janet E. James, Esq.                       David R. Pence
Senior Assistant Attorney General          Carter Zerbe & Associates, PLLC
Elaine L. Skorich, Esq.                    Charleston, West Virginia
Assistant Attorney General                 Attorneys for Respondent
Charleston, West Virginia                  James A. Odum
Attorneys for Petitioner DMV

                                           James T. Kratovil, Esq.
                                           Kratovil Law Offices PLLC
                                           Charles Town, West Virginia
                                           Attorney for Respondent Chad Doyle

The Opinion of the Court was delivered PER CURIAM.
JUSTICE BENJAMIN concurs, in part, and dissents, in part, and reserves the right to file a
separate opinion.

SYLLABUS BY THE COURT

1.      "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

2.      "Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syl. Pt. 1, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Prot.*, 191 W.Va. 134, 443 S.E.2d 602 (1994).

3.      "Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. Pt. 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

4.      "A law enforcement officer acting outside of his or her territorial jurisdiction has the same authority to arrest as does a private citizen and may make an extraterritorial arrest under those circumstances in which a private citizen would be

authorized to make an arrest." Syl. Pt. 2, *State ex. rel State v. Gustke*, 205 W.Va. 72, 516 S.E.2d 283 (1999).

5. "Under the common law, a private citizen is authorized to arrest another who commits a misdemeanor in his or her presence when that misdemeanor constitutes a breach of the peace." Syl. Pt. 3, *State ex. rel State v. Gustke*, 205 W.Va. 72, 516 S.E.2d 283 (1999).

6. "Driving while under the influence of alcohol, a controlled substance or drugs, as prohibited by W.Va. Code § 17C-5-2(d) (1996) (Repl.Vol.1996), constitutes a breach of the peace. Consequently, it is a misdemeanor offense for which a private citizen may arrest." Syl. Pt. 4, *State ex. rel State v. Gustke*, 205 W.Va. 72, 516 S.E.2d 283 (1999).

7. "In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W. Va. Code § 17C-5A-1(b) (2004) (Repl.Vol.2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W. Va. Code § 29A-5-2(b) (1964) (Repl.Vol.2002)." Syl. Pt. 3, *Crouch v. West Virginia Div. Of Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006).

Per Curiam:

These consolidated cases are before this Court upon appeal of final orders of the Circuit Court of Kanawha County denying petitions for judicial review filed by the petitioner, Steven O. Dale, Acting Commissioner of the West Virginia Division of Motor Vehicles[1] (hereinafter "DMV").[2] In these cases, the DMV revoked the driver's licenses of the respondents, James A. Odum and Chad Doyle, following their arrests for driving under the influence of alcohol. The revocations were reversed following administrative hearings because the hearing examiners found that the investigatory stops of the respondents' vehicles were not lawful. The decision of the hearing examiner was upheld by the circuit court in each case.

Upon consideration of the parties' briefs, oral argument and the submitted records, as well as the applicable statutory and case law, this Court finds that the evidentiary and factual findings of the hearing examiners were clearly wrong and that the evidence in the records establishes that the investigatory stops of the respondents' vehicles were valid. Accordingly, the final orders are reversed, and these cases are remanded to the circuit court

---

[1]When these cases were filed, Joe Miller was the Commissioner of the West Virginia Division of Motor Vehicles. Pursuant to Rule 41(c) of the Rules of Appellate Procedure, the current Commissioner was automatically substituted as a party in these cases.

[2]The final order was entered in Case No. 12-1403 on October 25, 2012, and the final order was entered in Case No. 12-1509 on November 21, 2012.

1

for reinstatement of the respective DMV orders revoking the respondents' licenses to operate a motor vehicle.

## I. Factual and Procedural Background

These cases were consolidated because they present the same issue on appeal. The relevant facts and procedural background for each case, however, are set forth separately below.

### A. Case No. 12-1403

During the early morning hours of September 15, 2010, Patrolman Nicholas M. Manning of the Sophia Police Department observed a vehicle driven by Respondent James A. Odum (hereinafter "Mr. Odum") on Robert C. Byrd Drive in the jurisdictional limits of the City of Beckley, West Virginia. According to Patrolman Manning, Mr. Odum ran a red light and drove into oncoming traffic almost striking his (Patrolman Manning's) vehicle. Patrolman Manning turned around and stopped Mr. Odum's vehicle. After approaching the vehicle and observing Mr. Odum, Patrolman Manning contacted the Beckley Police Department by calling the Emergency Operations Center. During proceedings below, Patrolman Manning testified that he believed a mutual aid agreement existed between the Sophia Police Department and the Beckley Police Department, giving him the authority to make a traffic stop within the city limits of Beckley.

2

Corporal Steven Whitt of the Beckley Police Department was dispatched to the scene. After speaking with Patrolman Manning, Corporal Whitt approached Mr. Odum's vehicle. According to Corporal Whitt, he smelled the distinct odor of an alcoholic beverage coming from inside Mr. Odum's vehicle, and Mr. Odum indicated that he had been drinking. Corporal Whitt then asked Mr. Odum to exit his vehicle and participate in some field sobriety tests. According to Corporal Whitt, Mr. Odum's speech was slow and slurred, and his eyes were glassy and appeared to be bloodshot. Mr. Odum failed the field sobriety tests; a preliminary breath test showed a .168 blood alcohol level.[3] Corporal Whitt then took Mr. Odum into custody for driving under the influence of alcohol and transported him to the Beckley Police Department. While at the Police Department, Mr. Odum refused to sign an implied consent statement[4] and twice refused to submit to a secondary chemical test. Corporal Whitt completed the DUI Information Sheet at the police station. He indicated on the form that Mr. Odum's vehicle was stopped for "straddling center line."

Subsequently, by order dated October 13, 2010, the DMV revoked Mr. Odum's driver's license for driving under the influence of alcohol and refusing a secondary chemical

---

[3]West Virginia Code § 17C-5A-1 (2013) provides for the revocation of a person's driver's license when he or she operates a motor vehicle "while having an alcohol concentration in his or her blood of eight hundredths of one percent or more, by weight" or "refuse[s] to submit to any secondary chemical test" as required under the provisions of West Virginia Code § 17C-5-1 to -12.

[4]*See* W.Va. Code § 17C-5A-1.

3

test. Mr. Odum timely requested an administrative hearing which was held on July 27, 2011. At the hearing, the evidence offered was the testimony of Corporal Whitt and Patrolman Manning and the DUI Information Sheet completed by Corporal Whitt. Mr. Odum did not testify but counsel on his behalf submitted an affidavit from the Beckley Chief of Police stating that there was no mutual aid agreement with the town of Sophia.

On December 21, 2011, the Office of Administrative Hearings (hereinafter "OAH")[5] entered a final order reversing the revocation of Mr. Odum's driver's license. The hearing examiner concluded that the evidence did not show that there had been a valid stop of Mr. Odum's vehicle and, therefore, did not establish that Mr. Odum had been lawfully arrested for driving under the influence of alcohol. The decision was based on the fact that Mr. Odum was stopped by a police officer acting outside his territorial jurisdiction and there was no mutual aid agreement between the Sophia Police Department and the Beckley Police Department. Further, the hearing examiner found that the recorded information on the DUI Information Sheet regarding the reason for the stop was materially inconsistent with Patrolman Manning's testimony at the administrative hearing regarding his initial encounter with Mr. Odum's vehicle.

---

[5]*See* W.Va. Code § 17C-5A-2 (2010) (providing review of license revocation and hearing before hearing examiner employed by Office of Administrative Hearings.).

4

Thereafter, on January 23, 2012, the DMV filed a petition for judicial review in the Circuit Court of Kanawha County.[6] A hearing was held on May 24, 2012. By order entered October 25, 2012, the circuit court concluded that the OAH did not err as a matter of law in reversing the order revoking Mr. Odum's driver's license and, thus, denied the petition for judicial review.

## B. Case No. 12-1509

In the early morning hours of November 5, 2010, Trooper Martin Glende of the West Virginia State Police was contacted by Charles Town Police Patrolman Benjamin Anderson regarding a possible intoxicated driver whom he had stopped on State Route 51 near the intersection of Jefferson Avenue in the city limits of Charles Town, West Virginia. Upon arrival at the scene, Trooper Glende approached the stopped vehicle, which was being operated by Respondent Chad Doyle (hereinafter "Mr. Doyle"). According to Trooper Glende, Mr. Doyle told him that he was coming from the race track and had consumed approximately five beers. Trooper Glende observed that Mr. Doyle's eyes were bloodshot, and he had a strong odor of alcohol on his breath. Trooper Glende instructed Mr. Doyle to exit his vehicle so he could conduct field sobriety tests. Trooper Glende administered the horizontal gaze nystagmus test, the walk-and-turn test, the one-leg stand test, and a preliminary breath test; Mr. Doyle failed all of the tests. Trooper Glende then arrested Mr.

---

[6]See W.Va. Code § 17C-5A-2 (also providing for judicial review).

Doyle for the offense of driving under the influence of alcohol and took him to the Charles Town Police Department for processing. At the police station, Trooper Glende performed a secondary chemical test on Mr. Doyle with his consent. The results of the test showed a blood alcohol level of 0.107%.

Subsequently, on December 21, 2010, the DMV entered an order revoking Mr. Doyle's driver's license. Mr. Doyle timely requested an administrative hearing, which was held on March 31, 2011. The evidence presented at the hearing was the testimony of Trooper Glende[7] and the exhibits and case file, which included the statement of the arresting officer/DUI Information Sheet.

On December 16, 2011, the OAH entered a final order reversing the DMV's revocation of Mr. Doyle's driver's license. The hearing examiner found that Trooper Glende did not personally observe Mr. Doyle operating a motor vehicle, nor did he observe intentional movement of the motor vehicle by Mr. Doyle. Further, the hearing examiner noted that Patrolman Anderson, who initiated the stop of Mr. Doyle's vehicle, did not appear at the administrative hearing to offer testimony regarding his articulable reasonable suspicion

---

[7]During his testimony, Trooper Glende relayed his conversation with Patrolman Anderson regarding his stop of Mr. Doyle's vehicle. Counsel for Mr. Doyle objected on hearsay grounds. The parties then stipulated that the hearsay testimony was only offered to show why Trooper Glende acted the way he did and not for the truth of the matter asserted.

6

to initiate a stop of Mr. Doyle's vehicle. As a result, the hearing examiner concluded that the record lacked sufficient evidence of a valid stop of Mr. Doyle's vehicle and, therefore, did not establish that Mr. Doyle had been lawfully arrested for driving under the influence of alcohol.

Thereafter, the DMV filed a petition for review with the circuit court on January 17, 2012. A hearing was held on May 24, 2012, and by order entered November 21, 2012, the circuit court found no error and denied the petition for review.

## II. Standard of Review

The applicable standard of review for these types of cases was set forth in syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), as follows:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

This Court has also held that "[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syl. Pt. 1, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Prot.*, 191 W.Va. 134, 443 S.E.2d 602 (1994). With these standards in mind, we consider the parties' arguments.

7

### III. Discussion

As set forth above, in both of these cases, the hearing examiners found that the evidence presented at the administrative hearings challenging the driver's license revocations did not establish that the investigatory stops of the respondents' vehicles were valid. As a result, the hearing examiners concluded that they could not make the specific finding required by West Virginia Code § 17C-5A-2(f)(2) (2010)[8] that "the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs or was lawfully taken into custody for purposes of administering a secondary test." In that regard, it is well established that pursuant to the Fourth Amendment of the United States Constitution and Article III, Section 6 of the West Virginia Constitution, "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. Pt. 1, in part, *State v. Stuart*, 192 W.Va. 428 452 S.E.2d 886 (1994). Thus, absent a valid investigatory stop, a finding that the ensuing arrest was lawful cannot be made.

---

[8]It is undisputed that the 2010 version of West Virginia Code § 17C-5A-2 applies to these cases. This statute was amended in 2012 and 2013 but the amendments did not alter the language of the statute at issue in these cases.

8

During the proceedings below, the DMV argued that the investigatory stops of the respondents' vehicles were valid.[9] Upon review of the submitted appendix record in each case, we agree. For the reasons set forth below, we conclude that the evidentiary and factual findings made by the hearing examiners in these cases were clearly wrong.

## A. The Stop of Mr. Odum's Vehicle

The hearing examiner found that the proof regarding the justification for the initial stop of Mr. Odum's vehicle was "irreversibly tainted" for two reasons. First, the hearing examiner concluded that Officer Manning lacked the authority to stop Mr. Odum's vehicle because he was outside his territorial jurisdiction. It was undisputed that Patrolman Manning, a police officer with the town of Sophia, stopped Mr. Odum within the city limits of Beckley. While Patrolman Manning testified during the proceeding below that he believed that a mutual aid agreement existed between the two municipalities, Mr. Odum presented evidence that no such agreement exists. In concluding that Mr. Odum was illegally

[9]In these appeals, the DMV argued that the legality of the investigatory stop is irrelevant in light of this Court's holding in syllabus point three of *Miller v. Toler*, 229 W.Va. 302, 729 S.E.2d 137 (2012), which states that "[t]he judicially-created exclusionary rule is not applicable in a civil, administrative driver's license revocation or suspension proceeding." Conversely, Mr. Odum and Mr. Doyle asserted that this Court's decision in *Toler* did not apply because at the time that *Toler* was decided, West Virginia Code § 17C-5A-2 did not require the hearing examiner to make a finding that a lawful arrest had been made. *See Miller v. Smith*, 229 W.Va. 478, 483, 729 S.E.2d 800, 805 (2012) (explaining that 2008 version of W.Va. Code § 17C-5A-2 did not include "lawful arrest" requirement). In light of our conclusion that the investigatory stops in both of these cases were valid, we need not reach this issue.

stopped by Patrolman Manning because the officer was not within his territorial jurisidiction, the hearing examiner ignored this Court's decision in *State ex. rel State v. Gustke*, 205 W.Va. 72, 516 S.E.2d 283 (1999).

In *Gustke*, Tad Wigal, an off-duty Parkersburg City Police Officer on his way home after completing his shift, observed a vehicle being driven erratically on Interstate 77 outside the city limits of Parkersburg. Officer Wigal contacted the Wood County Sheriff's Department, the agency with jurisdiction in the area where the vehicle was observed, and inquired whether there was an officer in the vicinity who could make a traffic stop. Upon being advised that no such officer was available, Officer Wigal stopped the vehicle and then instructed the driver to wait for a Sheriff's deputy. Shortly thereafter, an officer with the Sheriff's Department arrived, and the driver was ultimately arrested for driving under the influence of alcohol. In subsequent criminal proceedings, the driver challenged the indictment returned against him, arguing that the stop of his vehicle was illegal because Officer Wigal acted outside his territorial jurisdiction. The circuit court ruled in favor of the driver and granted his motion to dismiss the indictment. The State then sought a writ of prohibition from this Court.

In syllabus point two of *Gustke*, this Court held that "[a] law enforcement officer acting outside of his or her territorial jurisdiction has the same authority to arrest as

10

does a private citizen and may make an extraterritorial arrest under those circumstances in which a private citizen would be authorized to make an arrest." 205 W.Va. at 74, 516 S.E.2d at 285. This Court also observed that "[u]nder the common law, a private citizen is authorized to arrest another who commits a misdemeanor in his or her presence when that misdemeanor constitutes a breach of the peace." 205 W.Va. at 74, 516 S.E.2d at 285, syl. pt. 3. Finally, this Court declared in *Gustke* that "[d]riving while under the influence of alcohol, a controlled substance or drugs, as prohibited by W.Va. Code § 17C-5-2(d) (1996) (Repl.Vol.1996), constitutes a breach of the peace. Consequently, it is a misdemeanor offense for which a private citizen may arrest." 205 W.Va. at 74, 516 S.E.2d at 285, syl. pt. 4.

As discussed, the driver in *Gustke* was observed to be driving erratically. Although there was no direct testimony in the record from Officer Wigal, this Court found that it was reasonable to conclude that such erratic driving was sufficient probable cause to suspect that the driver was under the influence of alcohol or other controlled substances. Consequently, this Court concluded that the actions of Officer Wigal constituted a valid common law citizen's arrest and the circuit court had erred by suppressing all evidence flowing from Officer Wigal's stop of the vehicle. Likewise, Mr. Odum was driving erratically. Patrolman Manning's actions with respect to his observation and the stop of Mr. Odum's vehicle essentially mirror the actions taken by Officer Wigal in *Gustke*.

11

Accordingly, Patrolman Manning's actions also constituted a valid common law citizen's arrest. Therefore, the hearing examiner was clearly wrong in finding that the stop of Mr. Odum's vehicle was invalid because Officer Manning acted outside of his territorial jurisdiction.

The hearing examiner's second basis for concluding that the stop of Mr. Odum's vehicle was unlawful was that Patrolman Manning's testimony at the administrative hearing was materially inconsistent with the information regarding the stop that was recorded on the DUI Information Sheet. However, upon review of the testimony and the documentary evidence, we fail to see any inconsistency. During the proceedings below, Patrolman Manning was asked to describe his encounter with Mr. Odum which resulted in him stopping Mr. Odum's vehicle. Patrolman Manning testified as follows:

> He [Mr. Odum] was in the turn lane going left on Byrd Drive, stopped at the red light getting ready to turn. My light was green. The defendant's was red. He drove in coming into the turn lane–me facing northbound–almost striking my vehicle. I had to put the vehicle in reverse.

As noted above, the DUI Information Sheet, which was submitted into evidence during the administrative hearing, indicated that Mr. Odum's vehicle was "straddling center line." Obviously, a vehicle running a red light, driving into an opposing lane of traffic, and nearly striking another car would necessarily have to straddle the center line in order to do so. As such, the hearing examiner's conclusion that testimony and documentary evidence was

12

inconsistent was clearly wrong. Rather, the evidence presented during the hearing before the

OAH established that Patrolman Manning had an articulable reasonable suspicion to make

the traffic stop of Mr. Odum's vehicle. As this Court explained in *Stuart*,

> The criteria for reasonable suspicion to stop a vehicle are very
> similar to a street stop under *Terry* [*v. Ohio*, 392 U.S. 1 (1968)].
> Factors such as erratic or evasive driving, the appearance of the
> vehicle or its occupants, the area where the erratic or evasive
> driving takes place, and the experience of the police officers are
> significant in determining reasonable suspicion.

192 W.Va. at 433 n.10, 452 S.E.2d at 891 n.10.

### B. The Stop of Mr. Doyle's Vehicle

In Mr. Doyle's case, the hearing examiner found that there was no evidence

presented at the administrative hearing to show the stop of his vehicle was valid because the

law enforcement officer who initiated the encounter, Officer Anderson, did not appear at the

hearing to testify. While the arresting officer was present, his testimony regarding what

Officer Anderson told him with regard to the stop of Mr. Doyle's vehicle was stipulated by

the parties to be hearsay. Although there was no testimonial evidence presented on this issue,

our review of the record shows that documentary evidence was submitted during the hearing

that established that the stop of Mr. Doyle's vehicle by Officer Anderson was valid. In that

regard, the statement of the arresting officer/DUI Information Sheet, which was made part

of the record, indicated that Mr. Doyle's vehicle was stopped because of "Failure to Obey

13

Traffic Control Device." Further, in the "Action Taken" section of the document, Trooper

Glende wrote:

> On Friday, November 05, 2010, at approximately 0320 hrs, TFC MJ Glende received radio traffic from Charles Town Police Officer B. Anderson regarding a possible intoxicated driver located on WV Rt. 51 in the area of Jefferson Ave. Patrolman B. Anderson stated that he observed a white in color, 2009 Ford Van bearing FL registration L191WV turn left out of the Charles Town Race Track at a right turn only intersection. At this time, Patrolman Anderson initiated a traffic stop on the stated vehicle. Tpr. Glende arrived on scene and approached the driver.

During the proceeding below and in the course of the oral argument before this

Court, Mr. Doyle argued that this document was not properly admitted because no

foundation was laid for its admission. However, in *Crouch v. West Virginia Division of*

*Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006), this Court pointed out that:

> Although W. Va. Code § 29A-5-2(a) has made the rules of evidence applicable to DMV proceedings generally, W. Va. Code § 29A-5-2(b)[10] has carved out an exception to that general

---

[10]West Virginia Code § 29A-5-2(b), provides:

> *All evidence*, including papers, records, agency staff memoranda and *documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case*, and no other factual information or evidence shall be considered in the determination of the case. Documentary evidence may be received in the form of copies or excerpts

14

rule in order to permit the admission of certain types of evidence in administrative hearings that may or may not be admissible under the Rules of Evidence.

219 W.Va. at 75, 631 S.E.2d at 633. We concluded in *Crouch* that

> [w]ithout a doubt, the Legislature enacted W. Va. Code § 29A-5-2(b) with the intent that it would operate to place into evidence in an administrative hearing "[a]ll evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself . . . ." W. Va. Code § 29A-5-2(b). Indeed, admission of the type of materials identified in the statute is mandatory, as evidenced by the use of the language "*shall* be offered and made a part of the record in the case . . . ."

219 W.Va. at 76, 631 S.E.2d at 634. Accordingly, syllabus point 3 of *Crouch* holds:

> In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W. Va. Code § 17C-5A-1(b) (2004) (Repl.Vol.2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W. Va. Code § 29A-5-2(b) (1964) (Repl.Vol.2002).

219 W.Va. at 71, 631 S.E.2d at 629.

Of course, we recognized in *Crouch* that although a document is deemed admissible under West Virginia Code § 29A-5-2(b), its contents may still be challenged during the administrative hearing. 219 W.Va. at 76 n.12, 631 S.E.2d at 634 n.12 In the instant case, while Mr. Doyle objected to the admission of the statement of the arresting

---

or by incorporation by reference.

(Emphasis added).

15

officer, he did not come forward with any evidence challenging the content of that document. Consequently, there was unrebutted evidence admitted during the administrative hearing that established a valid stop of Mr. Doyle's vehicle, and the hearing examiner's finding to the contrary was clearly wrong.

## IV. Conclusion

Having found that the investigatory stops of the respondents' vehicles were valid, the final orders of the circuit court are reversed, and these cases are remanded to the circuit court for reinstatement of the respective DMV orders revoking the driver's licenses of Mr. Odum and Mr. Doyle to operate a motor vehicle.

Reversed and Remanded with Directions.