# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Steven O. Dale, Acting Commissioner,**
**West Virginia Division of Motor Vehicles,**
**Petitioner Below, Petitioner**

**FILED**

November 21, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0056**  (Kanawha County 12-AA-48)

**Gary A. Barnhouse, Jr.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Steven O. Dale, Acting Commissioner, West Virginia Division of Motor Vehicles ("DMV"), by counsel Elaine L. Skorich, appeals the order of the Circuit Court of Kanawha County entered December 30, 2013, that affirmed a final order of the Office of Administrative Hearings ("OAH"). The OAH order, entered April 4, 2012, reversed the DMV Commissioner's Order of Revocation of Respondent Gary A. Barnhouse, Jr.'s operator's license for the offense of driving under the influence of alcohol ("DUI"). Respondent, by counsel Gregory W. Sproles, filed a response in support of the circuit court's order. The DMV filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 14, 2011, Corporal M. Z. Dietz of the Nicholas County Sheriff's Department ("Cpl. Dietz" or "the investigating officer") followed respondent on Woodbine Road for approximately one mile.[1] After respondent turned off the road and into the driveway of his passenger's home, the investigating officer pulled in behind him and advised respondent that he was being stopped because he was "left of center several times, over and back." The DUI Information Sheet that was completed by Cpl. Dietz indicated under "vehicle in motion" that respondent's vehicle was "weaving," that the tires were on the "center marker," and that it was "braking erratically." Cpl. Dietz testified that, while speaking with respondent, he detected the odor of an alcoholic beverage emitting from the vehicle; that respondent's eyes were bloodshot;

---

[1] Cpl. Dietz observed respondent and his passenger, Michael Stinnett, purchasing beer at a convenience store. Both respondent and Mr. Stinnett testified that they were aware that Cpl. Dietz followed them onto Woodbine Road.

1

and that respondent admitted to having consumed one beer approximately thirty minutes before the traffic stop. Cpl. Dietz also noted on the DUI Information Sheet that respondent exited the vehicle normally; that he walked to the roadside and stood normally; that his speech and attitude were "ok;" and that he successfully completed the walk-and-turn and one-leg stand field sobriety tests.[2] Respondent was arrested for DUI and was transported to the Nicholas County Courthouse where he was administered a secondary chemical test of the breath. The result of that test revealed a blood alcohol content of .089%. By order entered June 16, 2011, respondent's operator's license was revoked for DUI.

At the administrative hearing, respondent presented witness testimony (including his own) regarding the condition of Woodbine Road. The witnesses testified that, formerly, Woodbine Road was a single lane road; that, a few years earlier, it was widened by approximately one foot and a center line was added; that there are no fog lines along the side of the road; that there is very little berm; and that other drivers, including respondent's witnesses, tend to stay close to the middle of the road. Respondent's passenger, Michael Stinnett, testified that respondent was not and did not appear intoxicated; that although the two men drove to a local convenience store to purchase beer, they did not drink the beer in the car; and that respondent did not drive abnormally. Respondent similarly testified that he did not weave while driving; that he did not cross the center line; that he drank one beer approximately thirty minutes before he was stopped; and that, contrary to Cpl. Dietz's report that respondent was "braking erratically," he only used his brakes one time in a downhill curve.

In addition to the foregoing evidence, respondent introduced into evidence a video recorded by Cpl. Dietz while following behind respondent's vehicle for approximately one mile prior to the stop. The OAH found that this objective evidence demonstrated that respondent did not brake erratically; that the vehicle did not cross the center line; and that, although Cpl. Dietz followed respondent for almost one mile, he "did not attempt to make a traffic stop until [respondent] signaled a turn and stopped in a driveway." The OAH concluded that Cpl. Dietz

> did not have reasonable suspicion to stop the [respondent]. The Investigating Officer testified that he stopped the [respondent] for weaving, driving with tires touching center line, and braking erratically. On the videotape, the Investigating Officer tells the [respondent] that he was stopped because he had crossed the center line several times. The Investigating Officer was inconsistent in stating the reasonable suspicion for the traffic stop. When it is determined that reasonable suspicion was not present to stop the [respondent] then any actions taken after the unlawful stop cannot be considered.

Thus, the OAH concluded that Cpl. Dietz "did not have reasonable grounds to believe the [respondent] had been driving a motor vehicle in this State while under the influence of

---

[2] A third field sobriety test—the horizontal gaze nystagmus test—was not properly administered and, as a consequence, the result was not considered by the OAH. Similarly, the results of a preliminary breath test were not considered by the OAH because there was no evidence that Cpl. Dietz was certified to administer the test.

alcohol[,]" and that respondent "was not lawfully arrested for an offense described in West Virginia Code § 17C-5-2." Accordingly, by order entered April 4, 2012, the OAH reversed the order that revoked respondent's operator's license for DUI.

On appeal, the Circuit Court of Kanawha County concluded that the OAH's findings and conclusions were supported by substantial evidence and were not clearly wrong and affirmed the reversal order by order entered December 30, 2013. This appeal followed.

The applicable standard of review for these types of cases is as follows:

"On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

Syl. Pt. 1, *Dale v. Odum*, 233 W.Va. 601, 760 S.E.2d 415 (2014). Furthermore, this Court has made clear that "'[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong.' Syl. Pt. 1, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Prot.,* 191 W.Va. 134, 443 S.E.2d 602 (1994)." *Odum*, 233 W.Va. at __, 760 S.E.2d at 416, syl. pt. 2.

The DMV's first assignment of error is that the circuit court clearly erred in affirming the OAH's finding that the stop of respondent's vehicle was invalid. The DMV argues that both the OAH and the circuit court placed too much emphasis on the fact that the "abbreviated reason" for the stop that Cpl. Dietz gave respondent—that he crossed the center line several times—differed slightly from the DUI Information Sheet and Cpl. Dietz's testimony that indicated that respondent was stopped for weaving on the roadway, having tires on the centerline marker, and "braking erratically." The DMV contends that this evidence is not inconsistent and that both the OAH and circuit court clearly erred in finding that Cpl. Dietz did not have a reasonable suspicion to stop respondent's vehicle.

This Court has held that "'[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime[.]' Syl. Pt. 1, in part, *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994)." Syl. Pt. 3, *Dale v. Ciccone*, 233 W.Va. 652, 760 S.E.2d 466 (2014). We have also explained that "'[w]hen evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police.'" *Id.* at syl. pt. 4 (quoting *Stuart,* 192 W.Va. at 428, 452 S.E.2d at 886, syl. pt. 2).

Upon careful review of the entire record on appeal, we find no error. Notwithstanding Cpl. Dietz's testimony, the DUI Information Sheet (that Cpl. Dietz prepared), and the DMV's argument to the contrary, the video of respondent's vehicle in no way shows it to be weaving in the roadway or braking erratically. In fact, the video showed that respondent applied the brakes

only one time, as he proceeded down a hill and turned right into his passenger's driveway. Although it appeared on the video that, at times, respondent's vehicle drove closely to the center line, it does not show that it crossed over and back several times as Cpl. Dietz advised respondent when he stopped the vehicle. Based upon the totality of the evidence, the OAH did not clearly err in finding that Cpl. Dietz did not have a reasonable suspicion to stop respondent's vehicle.

In related assignments of error, the DMV also argues that the circuit court erred by ignoring the principal question at the revocation hearing—that is, whether respondent "did drive a motor vehicle while under the influence of alcohol"[3]—and by further ignoring evidence that respondent was driving while under the influence of alcohol. The DMV argues that both the OAH and the circuit court should have considered the evidence that respondent's breath smelled of alcohol, that he had bloodshot eyes, and that he admitted to drinking a beer thirty minutes before the stop.[4] We disagree.

Under West Virginia Code § 17C-5A-2(f)(2) (2010), the statute in effect at the time of respondent's arrest, the OAH is required to make the specific finding of, inter alia, "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test[.]" *Id.*, in relevant part.[5] In *Ciccone*, we clarified that, under this

---

[3] West Virginia Code § 17C-5A-2(e) (2010) provides:

> The principal question at the hearing shall be whether the person did drive a motor vehicle while under the influence of alcohol, controlled substances or drugs, or did drive a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or did refuse to submit to the designated secondary chemical test, or did drive a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight.

[4] Although the DMV argues that the circuit court also ignored evidence that respondent failed the horizontal gaze nystagmus and preliminary breath tests, the OAH found that the former was not properly administered and the investigating officer was not certified to give the latter. *See* n.2, *supra*. The DMV does not dispute the OAH's findings in this regard.

[5] West Virginia Code § 17C-5A-2(f) (2010) states as follows:

> In the case of a hearing in which a person is accused of driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, or accused of driving a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or accused of driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight, the Office of Administrative Hearings shall make specific findings as to: (1) Whether

4

statute, "'absent a valid investigatory stop, a finding that the ensuing arrest was lawful cannot be made.'" 233 W.Va. at __, 760 S.E.2d at 473 (quoting *Odum*, 233 W.Va. at __, 760 S.E.2d at 420). Accordingly, "an individual cannot be considered lawfully arrested for DUI where law enforcement did not have the requisite articulable reasonable suspicion to initiate the underlying traffic stop." *Ciccone*, 233 W.Va. at__, 760 S.E.2d at 473. As this Court has already determined, the investigating officer in this case did not have the requisite articulable reasonable suspicion to initiate a traffic stop and, thus, respondent was not lawfully placed under arrest. Thus, neither the OAH nor the circuit court erred in not considering evidence garnered as a result of the invalid stop. *See Clower v. W.Va. Dept. of Motor Vehicles*, 223 W.Va. 535, 543, 678 S.E.2d 41, 49 (2009), *superseded by statute as stated in Dale v. Arthur*, No. 13-0374 (W.Va. Supreme Court, March 28, 2014) (memorandum decision) (upon finding that motorist "was not lawfully placed under arrest because [investigating officer] did not have the requisite articulable reasonable suspicion to initiate a traffic stop of Mr. Clower's vehicle[]" under 2004 version of 17C-5A-2(e), which required lawful arrest, Court concluded revocation was improper and did not address evidence that motorist had slurred speech, smelled of alcohol, failed field sobriety tests, and had blood alcohol content above legal limit.)

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum

---

the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol, controlled substances or drugs, or while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or to have been driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight; (2) whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test: Provided, That this element shall be waived in cases where no arrest occurred due to driver incapacitation; (3) whether the person committed an offense involving driving under the influence of alcohol, controlled substances or drugs; and (4) whether the tests, if any, were administered in accordance with the provisions of this article and article five [§§ 17C-5A-5 et seq.] of this chapter.

**DISSENTING:**

Justice Margaret L. Workman
Justice Allen H. Loughry II


LOUGHRY, Justice, dissenting:

The majority of this Court is allowing a drunk driver to escape the revocation of his driver's license based upon the contents of a video recording captured by the arresting officer's patrol car camera. Having personally viewed this recording, I question whether the majority watched the same video? The respondent's car is clearly seen crossing the center line of the roadway. In fact, at one point the respondent was driving on the center line in the face of an oncoming vehicle, forcing the other car to move to the far side of the roadway to avoid a collision. Unsurprisingly, Corporal Dietz, a trained law enforcement officer, immediately recognized the signs of drunk driving.

It is clear in this case that the respondent's driving provided the officer with an articulable reasonable suspicion to make a lawful traffic stop. *See* Syl. Pt. 1, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994) (holding that police officers may stop vehicle to investigate if they have articulable reasonable suspicion that person in vehicle is committing crime). The OAH's findings to the contrary are clearly wrong in view of the reliable, probative, and substantial evidence on the record. *See* W.Va. Code § 29A-5-4(g) (1998) (specifying grounds for reversing decision of administrative agency, including when findings are clearly wrong); Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996) (ruling that hearing examiner's findings of fact are not accorded deference if clearly wrong).

If the traffic stop was lawful, as it was in this case, then there is no basis to overturn the Commissioner's revocation order. The respondent admitted that he consumed beer approximately thirty minutes earlier. The arresting officer noted that the respondent smelled of alcohol. Moreover, the respondent failed both the preliminary and the secondary chemical breath tests, the latter of which showed that he was driving with an alcohol concentration in his blood that was beyond the legal limit. West Virginia Code § 17C-5A-1(a) (2008) requires the revocation of a driver's license when a person drives a motor vehicle while having a blood alcohol concentration of .08 or more. *Accord* W.Va. Code § 17C-5A-2(e) (2010) (specifying that "[t]he principal question at the [administrative driver's license revocation] hearing shall be whether the person . . . did drive a motor vehicle while having an alcohol concentration in the person's blood of" .08 or more).

The purpose of an administrative driver's license revocation is to promote public safety and to save lives. *State ex rel. Hall v. Schlaegel*, 202 W.Va. 93, 97, 502 S.E.2d 190, 194 (1998). Because that purpose was thwarted in this case, I respectfully dissent. I am authorized to state that Justice Workman joins in this dissent.