# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Everett Frazier, Commissioner,**
**West Virginia Division of Motor Vehicles,**
**Petitioner Below, Petitioner**

**vs.)  No. 20-0364** (Kanawha County 19-AA-93)

**Robert Howie,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("the commissioner"), appeals the order of the Circuit Court of Kanawha County, entered on May 4, 2020, affirming the administrative reinstatement of Respondent Robert Howie's motor vehicle operator's license.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review[2], the briefs, and the record presented, the Court finds that the circuit court improvidently reversed the commissioner's order of revocation. Accordingly, this case satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for reversal by memorandum decision.

---

[1] Petitioner appears by counsel Janet E. James. Respondent appears by counsel David Pence.

[2] The standard of review is as follows:

"'On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.' Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996)." Syl. Pt. 1, *Dale v. Odum*, 223 W. Va. 601, 760 S.E.2d 415 (2014).

Syl. Pt. 1, *Frazier v. Bragg*, 244 W. Va. 40, 851 S.E.2d 486 (2020).

A West Virginia State Police trooper stopped Mr. Howie's automobile in Mercer County in 2014, when he noticed that Mr. Howie was not wearing a seatbelt and was driving in the wrong direction on a one-way street. The trooper observed signs of intoxication and performed field sobriety tests, which indicated that Mr. Howie was impaired. The officer administered a preliminary breathalyzer test that suggested Mr. Howie had not consumed alcohol. However, Mr. Howie admitted to ingesting "several pills earlier in the day" and the trooper observed unlabeled medication bottles in Mr. Howie's automobile. The trooper arrested Mr. Howie for driving under the influence of controlled substances. The trooper asked Mr. Howie to submit to a blood test and Mr. Howie agreed, but also requested that the trooper order a blood test. The blood sample was drawn at a local hospital and sent to the West Virginia State Police Laboratory, where it was never tested and was lost or destroyed.

The commissioner revoked Mr. Howie's motor vehicle operator's license, and Mr. Howie requested an administrative hearing before the Office of Administrative Hearings ("OAH"). At the hearing, Mr. Howie testified that when he was arrested, he had an unlabled bottle containing caffeine pills, and another bottle containing methylphenidate (used to treat attention deficit disorder). The OAH reversed the commissioner's revocation entirely on the basis that the commissioner's failure to test Mr. Howie's blood sample or make it available for testing constituted a violation of Mr. Howie's statutory and due process rights. The commissioner appealed the OAH's final order to the Circuit Court of Kanawha County, and the circuit court agreed with the OAH.

Though the OAH and the circuit court found that West Virginia Code § 17C-5-9[3] prevents administrative revocation if a driver does not receive results of a blood test requested by the driver, we recently explained that analysis in such cases must go deeper.

> In a proceeding involving the revocation of a driver's license for driving under the influence of alcohol, controlled substances, or drugs where a driver demands a blood test pursuant to West Virginia Code § 17C-5-9 [2013], but the test is never given, a chemical analysis of the blood that is withdrawn is never completed, or the blood test results are lost, the trier of fact must consider (1) the degree of negligence or bad faith involved in the violation of the statute; (2) the importance of the blood test evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency

---

[3] West Virginia Code § 17C-5-9 provides:

Any person lawfully arrested for driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs shall have the right to demand that a sample or specimen of his or her blood or breath to determine the alcohol concentration of his or her blood be taken within two hours from and after the time of arrest and a sample or specimen of his or her blood or breath to determine the controlled substance or drug content of his or her blood, be taken within four hours from and after the time of arrest, and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand.

2

of the other evidence produced at the proceeding to sustain the revocation. The trier of fact must consider these factors in determining what consequences should flow from the absence of the blood test evidence under the particular facts of the case.

Syl. Pt. 6, *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021).

Here, we note that no evidence was presented concerning the circumstances under which Mr. Howie's blood sample was lost or destroyed, nor was there evidence concerning the efforts he employed in requesting the results of the test prior to his administrative hearing. Without such evidence, which is central to the first two *Talbert* considerations described above, we are left only to consider "the sufficiency of other evidence produced at the proceeding to sustain the revocation." We acknowledge that serology evidence might be helpful in assessing the degree of effect that controlled substances have on a driver. However, in this case, where Mr. Howie admitted to having ingested controlled substances, where the officer observed Mr. Howie driving in the wrong direction, and where the officer further noted other physical indicators of intoxication, we find that the *Talbert* considerations weigh in favor of the commissioner's revocation order.

For the foregoing reasons, we reverse the circuit court's May 4, 2020, order and remand this case to the circuit court for reinstatement of the commissioner's order administratively revoking Mr. Howie's motor vehicle operator's license.

Reversed and remanded.

**ISSUED:** September 20, 2022

**CONCURRED IN BY:**

Chief John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISSENTING:**

Justice William R. Wooton

WOOTON, J., dissenting:

I dissent to the majority's reversal and remand of this matter for reinstatement of petitioner's license revocation. As I have previously expressed, where driver-demanded blood testing results are not provided, this Court neither sits as a finder of fact with respect to administrative DUI revocations nor has the jurisdiction to conduct the fact-intensive analysis required by *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021). *See Frazier v. Null*, ___ W. Va. ___, ___, 874 S.E.2d 252, 259-265 (W. Va. 2022) (Wooton, J., dissenting).

In this case, both the officer and petitioner requested blood testing, the results of which were lost or destroyed. Accordingly, the Office of Administrative Hearings (hereinafter "OAH") reversed the revocation order without reaching the issue of whether the driver was DUI; this ruling was then affirmed by the circuit court. The majority reverses the OAH and circuit court by evaluating—for the first time—the *Talbert* factors. Incredibly, despite finding no evidence whatsoever as to the first two factors, the majority unabashedly takes on the role of "trier of fact," declaring that "*we* are [] left to consider" only the final factor (emphasis added). The majority then itself evaluates and weighs the evidence of intoxication—which was never evaluated below by the finder of fact—to conclude that petitioner was DUI.

Again, none of these factual determinations can be made by this Court in the first instance. Syllabus Point six of *Talbert* expressly states that the "trier of fact" must determine "what consequences should flow" from the absence of the blood testing results. *See id*. This Court is not and never has been a trier of fact. Further, the *Talbert* factors do not authorize this Court to serve as a surrogate fact-finder, and to find DUI where no properly authorized fact-finder has even reached that issue. As I have previously observed, the failure of the OAH to reach the issue of DUI has consistently been held by this Court to require remand for that factual determination. *See Null,* ___ W. Va. at ___, 874 S.E.2d at 260 (Wooton, J., dissenting) ("For decades this Court has found this failure to resolve credibility issues and/or reach the ultimate issue of DUI to be reversible error necessitating remand for resolution of such disputes" and collecting cases). The lack of a fact-finder to which to remand this matter mandates affirmance of the license reinstatement, consistent with the Legislature's edict that administrative revocations that remain unresolved as of the dissolution of the OAH must be dismissed. *See* W. Va. Code § 17C-5C-1a(c)(1) (2020) ("If any appeal of a revocation or suspension order, described in § 17C-5C-3(3) of this code, is pending before the [OAH] on or after July 1, 2021, the underlying revocation or suspension order shall be dismissed.").

Because the OAH has been dissolved, a majority of this Court has reconstituted itself as a fact-finding body to ensure that these license revocations stand. However, this Court cannot sit as a fact-finder merely because "it lacks a procedurally sustainable method for remanding this action." *Id.* at ___, 874 S.E.2d at 260 (Wooton, J., dissenting). To do so constitutes not only a due process deprivation of the highest order, but a violation of fundamental tenets of appellate review. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact."); *BouSamra v. Excela Health*, 210 A.3d 967, 979-80 (Pa. 2019) ("[I]t is not an appellate court's function to engage in fact finding." (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986))).

Accordingly, I respectfully dissent.