314 S.E.2d 859

**Michael J. ALBRECHT**

v.

**STATE of West Virginia, W.Va. Dept. of Motor Vehicles, et al.**

No. 16017.

Supreme Court of Appeals of West Virginia.

March 21, 1984.

Shuman, Annand & Poe, Charles R. Bailey, Charleston, for appellant.

Fredrick S. Wilkerson, Asst. Atty. Gen., Charleston, for appellees.

MILLER, Justice:

This case involves an appeal by Michael J. Albrecht from a final order entered by the Circuit Court of Kanawha County on April 13, 1983. The order affirmed a suspension of his driver's license by the Department of Motor Vehicles for driving under the influence of alcohol. Mr. Albrecht's primary contention is that an administrative revocation of his license could not occur unless he had been given one of the statutorily designated chemical tests. He also asserts that there was insufficient evidence to support the revocation. We disagree and, therefore, affirm the suspension.

On the evening of February 27, 1982, Trooper Charles W. McDonald of the West Virginia Department of Public Safety received a call requesting him to investigate a traffic accident on Route 16 near Stemson, West Virginia. When he arrived at the scene of the accident, he found a Chevrolet van resting against a utility pole approximately seven or eight feet from the roadway. Mr. Albrecht, who had been driving the van at the time of the accident, was still inside the vehicle.

Trooper McDonald noticed that Mr. Albrecht had difficulty in getting out of the van. When he finally emerged, he was incoherent, staggered, and had to be helped to the trooper's car because he was unable to stand without assistance. Trooper McDonald also noticed that the interior of the van smelled of alcohol. On the basis of these observations, he concluded that Mr. Albrecht was very intoxicated, and arrested him for driving under the influence of alcohol.

Sometime during the night of his arrest, Mr. Albrecht was taken to Calhoun County General Hospital for treatment of his injuries. While he was at the hospital, he admitted to Trooper McDonald that he had consumed two or three twelve-ounce bottles of beer before the accident. He remained at the hospital for three or four days because of the concussion he had sustained when the van hit the utility pole. Upon his release, he was immediately taken before a magistrate for purposes of arraignment.

On March 1, 1982, Trooper McDonald filed an affidavit concerning the arrest with the Department of Motor Vehicles as required by W.Va.Code, 17C–5A–1(b) (1981). The Department entered an order on March 17, 1982, suspending Mr. Albrecht's license on the ground that he had been driving under the influence of alcohol. Mr. Albrecht requested a hearing with regard to this suspension.

On September 15, 1982, a hearing examiner for the Department of Motor Vehicles conducted a hearing at which Trooper McDonald and Mr. Albrecht appeared. Both testified that no one had tested Mr. Albrecht's blood, breath or urine either before or after the arrest. The Department entered a further order dated November 1, 1982, affirming the suspension of Mr. Albrecht's license.

Mr. Albrecht then filed a petition for judicial review in the Circuit Court of Kanawha County and on April 13, 1983, the court upheld the order of suspension entered by the Department.

I.

 Mr. Albrecht maintains that the Commissioner of Motor Vehicles had to rescind the initial suspension of his license

unless she found that a chemical sobriety test had been properly performed. He bases his argument on the language of W.Va. Code, 17C–5A–2(c) (1981), which requires the Commissioner to make certain findings when a hearing is requested. His argument is that finding number (3) requires the administration of chemical tests in cases such as his:

"The commissioner shall make specific findings as to (1) whether the arresting law-enforcement officer had reasonable grounds to believe such person to have been driving while under the influence of alcohol, controlled substances or drugs, (2) whether such person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs, and (3) whether the tests which were administered were administered in accordance with the provisions of this article and article five of this chapter."

Preceding this language in the same subsection, however, is the following language:

"The principal question at such hearing shall be whether the person did drive a motor vehicle while under the influence of alcohol, *or* under the influence of any controlled substance, *or* under the influence of any other drug to a degree which renders him incapable of safely driving, *or* under the combined influence of alcohol and any controlled substance *or* any other drug to a degree which renders him incapable of safely driving, *or* did drive a motor vehicle while having an alcoholic concentration in his blood of ten hundredths of one percent (.10), or more, by weight." (Emphasis supplied)

Driving under the influence of alcohol and driving with an alcoholic concentration of .10 percent are separate grounds for suspension of a driver's license. This is quite clear from the wording of W.Va. Code, 17C–5A–1(a) (1981), which also states

the grounds for revocation of a driver's license in the disjunctive.[1] We have traditionally held that where the disjunctive "or" is used, it ordinarily connotes an alternative between the two clauses it connects. *State v. Elder*, 152 W.Va. 571, 577, 165 S.E.2d 108, 112 (1968). A chemical test is obviously necessary to establish the concentration of alcohol in a person's blood when that is the intended basis for revocation. However, this does not foreclose proof by other means of another ground for revocation, such as driving under the influence of alcohol.

We are reinforced in this conclusion by W.Va.Code, 17C–5–8, which discusses the admissibility and evidentiary value of chemical tests. The last sentence of that provision clearly indicates that other evidence can be used to establish intoxication: "The provisions of this article shall not limit the introduction in any administrative or judicial proceeding of any other competent evidence bearing on the question of whether the person was under the influence of alcohol, controlled substances or drugs."

The appellant also relies on the second requirement mentioned in the above quoted language from W.Va.Code, 17C–5A–2(c), "whether such person was lawfully placed under arrest for an offense involving driving under the influence of alcohol." Mr. Albrecht points to the following language from W.Va.Code, 17C–5–4 (1981):

"A secondary test of blood, breath, or urine *shall* be *incidental* to a lawful arrest and *shall* be administered at the direction of the arresting law-enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public streets or highways while under the influence of alcohol ... as prohibited by section two [§ 17C–5–2] of this article." (Emphasis supplied)

---

1. The material portion of W.Va.Code, 17C–5A–1(a) (1981), states:

"[F]or the determination of whether his license to operate a motor vehicle in this state should be revoked or suspended because he did drive a motor vehicle while under the

influence of alcohol, controlled substances or drugs, or did drive a motor vehicle while having an alcoholic concentration in his blood of ten hundredths of one percent (.10), or more, by weight."

According to his interpretation of this provision, a secondary test of blood, breath or urine must be administered whenever an arrest is made. If the test is not performed, then the arrest is unlawful.

W.Va.Code, 17C–5–4 (1981), deals with the State's right to require a motorist to undergo a chemical test for determining the alcoholic content of his blood.[2] It does not mandate testing in all cases involving an arrest for driving under the influence of alcohol or drugs. We find no language in this section that can be read to mean that chemical tests must be administered in every case.

The phrase "[a] secondary test of blood, breath or urine shall be incidental to a lawful arrest" means that the results of a chemical test are not admissible unless it was done in connection with, or "incidental" to, a lawful arrest. This is the construction we placed on this statutory language in *State v. Byers*, 159 W.Va. 596, 224 S.E.2d 726 (1976), where we found a blood test to be inadmissible because it was not taken incident to a lawful arrest.

We reject the appellant's contention that this language means that an arrest is unlawful unless a secondary test is performed. As *Byers* demonstrates, the lawfulness of an arrest is independently determined in light of general arrest principles. If the arrest is unlawful, then the results of a test are inadmissible.

Furthermore, we disagree with the appellant's argument that the language

stating that a chemical test "shall be administered at the direction of the arresting law-enforcement officer" means that such a test is mandatory. All this phrase means is that if a chemical test is given, it has to be administered at the direction of the arresting officer. In *City of Kettering v. Baker*, 42 Ohio St.2d 351, 353, 328 N.E.2d 805, 806 (1975), the court explained that the analogous language of Ohio's implied consent law merely "states under whose presence and direction the tests shall be administered." Our statutory language was undoubtedly intended to serve the same purpose—to identify the person, i.e., the arresting officer, under whose direction the test should be administered.

Other courts construing similar statutory language have concluded that such provisions do not mandate the use of chemical sobriety tests in all cases. *See, e.g. People v. Culp*, 189 Colo. 76, 78, 537 P.2d 746, 747 (1975) (en banc); *State v. Sawyer*, 382 A.2d 1051 (Me.1978); *Moore v. State*, 533 P.2d 997, 998 (Okl.Cr.App.1975); *Hammer v. Town of Jackson*, 524 P.2d 884, 887 (Wyo. 1974); Annot., 95 A.L.R.3d 710 (1979).

Thus, we conclude that there are no provisions in either W.Va.Code, 17C–5–1 (1981), *et seq.*, or W.Va.Code, 17C–5A–1 (1981), *et seq.*, that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license.[3]

---

**2.** The relevant part of W.Va.Code, 17C–5–4 (1981), provides:

"Any person who drives a motor vehicle upon the public streets or highways of this state shall be deemed to have given his consent by the operation thereof, subject to the provisions of this article, to a preliminary breath analysis and a secondary chemical test of either his blood, breath or urine for the purposes of determining the alcoholic content of his blood. A preliminary breath analysis may be administered in accordance with the provisions of section five of this article whenever a police officer has reasonable cause to believe a person to have been driving a motor vehicle upon the public streets and highways while under the influence of alcohol, controlled substances or drugs as prohibited by section two of this article. A secondary test

of blood, breath or urine shall be incidental to a lawful arrest and shall be administered at the direction of the arresting law-enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public streets or highways while under the influence of alcohol, controlled substances or drugs as prohibited by section two of this article.... Any person to whom a preliminary breath test is administered who is then arrested shall be told that his refusal to submit to the secondary test finally designated as provided in this section, will result in the suspension of his license to operate a motor vehicle in this state for a period of one year."

**3.** We again emphasize that W.Va.Code, 17C–5A–1(a) (1981), contains alternative grounds for revocation of a driver's license. *See* note 1,

■ As a final legal point, the appellant repeatedly remarks that we have held that a driver's license is a "sufficiently valuable right to require due process procedures." *Jordan v. Roberts*, 161 W.Va. 750, 246 S.E.2d 259, 261 (1978). In *Jordan*, we specifically found that the administrative procedures surrounding suspension of a driver's license for driving under the influence of alcohol did comport with constitutional due process standards. We do not believe that the procedural due process provisions of either the State or federal constitutions require the administration of a chemical sobriety test before a license can be suspended for driving under the influence of alcohol. This argument has been rejected in a number of cases. *See, e.g., People v. Hedrick*, 192 Colo. 37, 557 P.2d 378 (1976); *State v. Reyna*, 92 Idaho 669, 448 P.2d 762 (1968); *State v. Urrego*, 41 Ohio App.2d 124, 322 N.E.2d 688 (1974); Annot., 95 A.L. R.3d 710 (1979); 7A Am.Jur.2d *Automobiles and Highway Traffic* § 305 (1980); *cf. South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

## II.

Mr. Albrecht maintains that even if chemical sobriety tests are not required for a lawful arrest, the circuit court erred in finding that there was sufficient evidence in the record to sustain the Commissioner's ruling. It is undisputed, however, that Mr. Albrecht lost control of the vehicle he was driving and crashed into a utility pole seven or eight feet from the road,[4] that his vehicle smelled of alcohol when Trooper McDonald arrived to investigate the accident, and that he subsequently admitted to Trooper McDonald that he had been drinking prior to the accident.

■ We believe that these facts are sufficient to establish by a preponderance of the evidence that the appellant had been driving under the influence of alcohol. A preponderance of the evidence is all that is required to justify administrative revocation. *See* W.Va.Code, 17C–5A–2(j)(4) (1981); *Jordan v. Roberts*, 161 W.Va. at 755–757, 246 S.E.2d at 262–263. Thus, even if one dismisses Mr. Albrecht's seemingly drunken behavior following the accident as the result of a cerebral concussion, there is still sufficient evidence to support the decision of the Commissioner of Motor Vehicles.

Much the same argument was advanced in *Byers*, which involved a similar factual situation, although it was a criminal prosecution where the standard of proof is much higher. We summarized the law in Syllabus Point 7:

"Where there is adequate evidence reflecting that a defendant, who was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication and had consumed an alcoholic beverage, a trial court may submit for jury determination the question of whether the defendant committed the offense of driving a motor vehicle while under the influence of intoxicating liquor."

Accordingly, we believe that where, as here, there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

Finding no error in the underlying proceeding, we affirm the administrative suspension.

Affirmed.

*supra.* Where the revocation is based on having a blood alcohol content of .10 percent, a chemical test is necessary to prove this fact. Here, the revocation was on the alternative ground of driving under the influence of alcohol, and a chemical test was not required.

**4.** This Court in *Reilley v. Byard*, 146 W.Va. 292, 301, 119 S.E.2d 650, 655 (1961), commenting on the actions of a motorist who left the highway and collided with a telephone pole, stated: "Rational men do not purposely operate motor vehicles in such manner. Not only traffic regulations, but also prudence and fundamental human instincts of self-preservation dictate otherwise."