355 S.E.2d 416

**Garry L. HINKLE**

v.

**L.W. BECHTOLD, Commissioner, W.Va. Department of Motor Vehicles.**

**No. 17035.**

Supreme Court of Appeals of West Virginia.

March 26, 1987.

Charles G. Brown, Atty. Gen., Doren Bureell, Asst. Atty. Gen., Charleston, for appellant.

Howard J. Blyler, Cowen, for appellee.

PER CURIAM:

The appellant, L.W. Bechtold, Commissioner of the West Virginia Department of Motor Vehicles, appeals from an order of the Circuit Court of Webster County setting aside an administrative order of the Commissioner which suspended the license of Garry L. Hinkle, the appellee, to operate a motor vehicle for driving under the influence of alcohol. For the reasons set forth below, we hold that the suspension of the appellee's license was proper, and we reverse.

Garry Hinkle was arrested on May 9, 1982 for driving under the influence of alcohol. At approximately midnight, Officer George Settles of the Cowen Police Department saw a blue Dodge Dart on Route 20 weaving back and forth on the road. He followed the vehicle a short distance and when the driver continued to weave across the center line, almost striking a guardrail at one point, Officer Settles turned on his blue lights to signal the driver to pull over. When the officer approached the stopped vehicle, Mr. Hinkle was under the steering wheel.

Officer Settles noticed that when Mr. Hinkle emerged from the car he was staggering and unable to walk to the police car without assistance. In addition, the officer noticed that Mr. Hinkle's speech was slurred and that there was a strong odor of alcohol about him. On the basis of these observations, he concluded that Mr. Hinkle was intoxicated, and arrested him for driving under the influence of alcohol.

Within twenty-four hours, Officer Settles completed an affidavit concerning the arrest pursuant to *W.Va. Code*, 17C–5A–1(b) [1981], the statute in effect at that time, and mailed it to the Department of Motor Vehicles. The Department entered an order on June 7, 1982, suspending Mr. Hinkle's license for driving under the influence of alcohol. Mr. Hinkle requested an administrative hearing with regard to the suspension and the hearing was held on July 20, 1982.

Following the taking of evidence at the hearing, the Commissioner entered an order affirming the suspension. The Commissioner's order was based solely on Officer Settles' testimony of his observations of Mr. Hinkle. Although a breathalyzer test and a blood test were administered following the arrest, the results of those tests were not relied upon by the Commissioner in her decision.

Following entry of the final administrative order suspending his license for a six-month period, Mr. Hinkle filed a petition for judicial review in the Circuit Court of Webster County. On April 15, 1985, the court set aside the Commissioner's order on the grounds that although Officer Settles had probable cause to arrest Mr. Hinkle, he was not a law-enforcement officer as defined by *W.Va. Code*, 17C–5–4 [1981] in effect at the time of the arrest, and that, therefore, the affidavit upon which the revocation was based was improper. The Commissioner appeals from the circuit court's order.

The statute upon which the court relied in invalidating the Commissioner's order

was *W.Va. Code*, 17C–5–4 [1981], our former implied consent law. Under that statute, a person driving on public streets or highways was deemed to have given his consent to a "preliminary breath analysis and a secondary chemical test" for purposes of determining the alcoholic content of his blood. The statute specified that the only persons qualified to administer or direct the administration of the chemical tests designated in the statute were "law-enforcement officers" defined as members of the Department of Public Safety, sheriffs and deputy sheriffs of any county and members of a municipal police department of a Class I, Class II or Class III city. At the time of Mr. Hinkle's arrest, Officer Settles was a member of the police department of the City of Cowen, a Class IV town as defined by *W.Va. Code*, 8–1–3 [1969]. In setting aside the Commissioner's order, the court applied the definition of law-enforcement officer in *W.Va. Code*, 17C–5–4 [1981] to *W.Va. Code*, 17C–5A–1(b) [1981], the statute that dealt with the administrative suspension of a person's license. In 1982 when Mr. Hinkle was arrested, *W.Va. Code*, 17C–5A–1(b) [1981] provided in part:

> Any law-enforcement officer arresting a person for an offense described in section two [§ 17C–5–2], article five of this chapter shall report to the commissioner of the department of motor vehicles by sworn, written statement within twenty-four hours the name and address of the person so arrested.

Although this section required that an affidavit be filed with the Commissioner to trigger the administrative revocation process, there was nothing in the statute that suggested that only those law-enforcement officers qualified to administer chemical tests under former *W.Va. Code*, 17C–5–4 [1981] could file valid affidavits with the Commissioner for the administrative suspension of a license.[1]

In the case before us, although chemical tests were administered, the results of those tests were not considered by the Commissioner in reaching the decision to suspend Mr. Hinkle's license. Instead, the Commissioner relied solely upon the arresting officer's testimony and found that the State had proved by a preponderance of the evidence that Mr. Hinkle had been driving under the influence of alcohol. Her actions were entirely proper. In *Albrecht v. State*, 173 W.Va. 268, 314 S.E.2d 859 (1984), we held:

> There are no provisions in either W.Va. Code, 17C–5–1 (1981), *et seq.*, or W.Va. Code, 17C–5A–1 (1981), *et seq.*, that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license.

For the reasons stated above, the judgment of the Circuit Court of Webster County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

1. We note that the implied consent law was amended in 1983 and now defines law-enforcement officer to include members of a police department in a Class IV town or village. *See W.Va. Code*, 17C–5–4 [1983] and *W.Va. Code*, 8–1–2(a)(1) [1969].