456 S.E.2d 38

**Jennings E. BOLEY, Plaintiff Below, Appellant,**

v.

**Jane L. CLINE, Commissioner, Department of Motor Vehicles, Defendant Below, Appellee.**

**No. 22341.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1995.

Decided March 3, 1995.

ducting a paternity hearing in a proceeding such as this.

M. Andrew Brison, John R. Mitchell, Jr., Mitchell & Murray, Charleston, for appellant.

Darrell V. McGraw, Jr., Atty. Gen., Paul E. Jordan, Sr. Asst. Atty. Gen., Charleston, for appellee.

## PER CURIAM:

This case is before this Court upon the appeal of Jennings E. Boley from the final order of the Circuit Court of Kanawha County, West Virginia, entered on December 1, 1993. Pursuant to that order, the circuit court affirmed the administrative revocation of the appellant's license to operate a motor vehicle for driving under the influence of alcohol. *W.Va.Code*, 17C–5A–2 [1986]. For the reasons expressed below, this Court affirms the order of the circuit court.

## I

On January 24, 1990, in Kanawha County, Trooper Gary L. Karastury of the Department of Public Safety was driving north on Interstate 77 toward Sissonville, West Virginia. While driving, he noticed a 1978 Chevrolet Blazer "weaving in the road going north." Trooper Karastury stopped the Chevrolet Blazer and conversed with the driver.

The driver was the appellant, and the trooper noticed a case of beer in the vehicle, apparently unopened. However, as Trooper Karastury testified: "I could smell what I took to be beer coming from Mr. Boley."

Trooper Karastury conducted several field sobriety tests at the scene concerning the influence of alcohol, all of which the appellant failed. One such test was the horizontal gaze nystagmus (HGN) test. Although the appellant had a damaged left eye, the trooper conducted the horizontal gaze nystagmus test with regard to the appellant's right eye. The HGN test indicated the influence of alcohol.

Trooper Karastury placed the appellant under arrest for driving under the influence of alcohol and transported the appellant to

the West Virginia State Police Detachment in South Charleston, West Virginia, where a secondary chemical breath test was administered, also indicating, with a .182 result, the influence of alcohol.

As a result of the above, the appellant's license to operate a motor vehicle was revoked on February 13, 1990, by the Division of Motor Vehicles. Upon the appellant's protest of the revocation, an evidentiary hearing was held, and on June 1, 1992, a final administrative order was entered by the Commissioner. As reflected in the final administrative order, the field sobriety tests conducted by Trooper Karastury and the secondary chemical breath test were excluded as evidence for failure to lay a proper foundation. Excepted from the exclusion was the horizontal gaze nystagmus test conducted by the trooper.

The Commissioner, in the final administrative order, concluded that the appellant "drove a motor vehicle in this State while under the influence of alcohol on January 24, 1990." Based upon that conclusion, and a finding that the appellant had a previous, similar violation in 1984, the appellant's license to operate a motor vehicle was revoked for a period of ten years, with eligibility for reinstatement after five years. *W.Va.Code,* 17C–5A–2 [1986]. The Circuit Court of Kanawha County, as stated in its order of December 1, 1993, adopted the findings of the Commissioner and affirmed the revocation.

## II

Article 5A of chapter 17C of the *West Virginia Code* is entitled "Administrative Procedures for Suspension and Revocation of Licenses for Driving Under the Influence of Alcohol, Controlled Substances or Drugs," and *W.Va.Code,* 17C–5A–2(m) [1986], therein applies the State Administrative Procedures Act (*W.Va.Code,* 29A–1–1, *et seq.*) to judicial review of license revocation proceedings. *See* syl. pt. 1, *Hinerman v. Department of Motor Vehicles,* 189 W.Va. 353, 431 S.E.2d 692 (1993); syl. pt. 1, *Johnson v. Department of Motor Vehicles,* 173 W.Va. 565, 318 S.E.2d 616 (1984). In *Abshire v. Cline,* 193 W.Va. 180, 455 S.E.2d 549 (1995), we noted in syllabus point 1 that "[a] driver's license is a

property interest and such interest is entitled to protection under the Due Process Clause of the West Virginia Constitution."

In this case, emphasizing *W.Va.Code,* 29A–5–4(g)(5) [1964], of the State Administrative Procedures Act, the appellant contends that the final orders of the Division of Motor Vehicles and the circuit court are "clearly wrong in view of the reliable, probative and substantial evidence on the whole record...."

■ The evidence in this case, as the parties agree, must be viewed in the context of syllabus point 2 of *Albrecht v. State,* 173 W.Va. 268, 314 S.E.2d 859 (1984), in which we held:

Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

*See also* syl. pt. 2, *Hinerman, supra;* syl. pt. 2, *Division of Motor Vehicles v. Cline,* 188 W.Va. 273, 423 S.E.2d 882 (1992).

The appellant, in his petition and brief, cites *Albrecht, Hinerman* and *Division of Motor Vehicles v. Cline,* and asserts that, although this Court affirmed the license revocation of the drivers in those cases, for driving under the influence of alcohol, the evidence of intoxication in those cases was much stronger than in this case. Specifically, the driver, in *Albrecht,* admitted that he had consumed alcohol, and, in *Hinerman,* the driver failed three field sobriety tests and had a blood alcohol level indicating intoxication. The driver in *Division of Motor Vehicles v. Cline* admitted that he had consumed alcohol and failed two field sobriety tests. *See also Hinkle v. Bechtold,* 177 W.Va. 627, 355 S.E.2d 416 (1987), involving slurred speech and staggering.

■ As discussed above, much of the evidence damaging to the appellant herein was excluded at the administrative level, particularly the result of the secondary chemical

breath test. However, we held in syllabus point 1 of *Albrecht:*

> There are no provisions in either W.Va. Code, 17C–5–1 (1981), *et seq.,* or W.Va. Code, 17C–5A–1 (1981), *et seq.,* that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license.

■ The absence of a chemical test does not foreclose proof by other means of intoxication as a ground for license revocation. *W.Va.Code,* 17C–5A–2 (1986); *Albrecht, supra,* 173 W.Va. at 271, 314 S.E.2d at 862; *Belknap v. Cline,* 190 W.Va. 590, 592 n. 5, 439 S.E.2d 455, 457 n. 5 (1993).

■ Here, Trooper Karastury testified that he could detect the smell of beer coming from the appellant. Although this Court recognized that the smell of alcohol or "drinker's breath" alone does not necessarily demonstrate intoxication, *Federoff v. Rutledge,* 175 W.Va. 389, 393–94, 332 S.E.2d 855, 859 (1985), evidence of the smell of beer or alcoholic beverages is ordinarily a factor to be considered and was present in the circumstances of *Albrecht, Hinerman, Division of Motor Vehicles v. Cline* and *Hinkle,* cited above. Also to be considered was the fact that the vehicle driven by the appellant was seen weaving upon the highway. *Baran v. State,* 639 N.E.2d 642 (Ind.1994), investigatory stop appropriate where motorist was weaving from lane to lane on interstate highway; *People v. Christie,* 206 Mich.App. 304, 520 N.W.2d 647, 649 (1994) ("[E]rratic driving can give rise to a reasonable suspicion of unlawful intoxication so as to justify an investigatory stop by a police officer."); *People v. Loucks,* 135 Ill.App.3d 530, 90 Ill.Dec. 286, 287, 481 N.E.2d 1086, 1087 (1985) ("Weaving within the lane of traffic in which a vehicle is traveling provides a sufficient basis for an investigatory stop of a motor vehicle[.]")

Moreover, the horizontal gaze nystagmus test conducted by Trooper Karastury indicated that the appellant was under the influence of alcohol. In syllabus point 2 of *State v. Barker,* 179 W.Va. 194, 366 S.E.2d 642 (1988), we held: "Estimates of blood alcohol content based on the Horizontal Gaze Nystagmus test are inadmissible as evidence in a criminal trial." Although *Barker* involved a criminal prosecution for driving under the influence of alcohol, rather than a license revocation, the general nature and reliability of the HGN test was discussed. As this Court concluded: "[E]ven if the reliability of the HGN test is demonstrated, an expert's testimony as to a driver's performance on the test is admissible only as evidence that the driver was under the influence. Estimates of blood alcohol content based on the HGN test are inadmissible." 179 W.Va. at 198, 366 S.E.2d at 646.

In *Cunningham v. Bechtold,* 186 W.Va. 474, 413 S.E.2d 129 (1991), this Court indicated that the failure to satisfactorily complete field sobriety tests, including the horizontal gaze nystagmus test, sufficiently warranted a police officer "in believing that the appellant was driving under the influence of alcohol." 186 W.Va. at 478, 413 S.E.2d at 133. *See also* 2 R.E. Erwin, *Defense of Drunk Driving Cases* sec. 10.11 (3rd ed. 1995), discussing *Barker* and suggesting that the HGN test "can be considered an FST [field sobriety test] and used with or without other tests to establish probable cause for an arrest."

The Commissioner, in the final administrative order, concluded that the appellant drove a motor vehicle in this State while under the influence of alcohol on January 24, 1990. This court is of the opinion that, under the principles enunciated in *Albrecht,* the record contains sufficient proof to warrant the Commissioner's revocation of the appellant's license to operate a motor vehicle. The Circuit Court of Kanawha County, therefore, correctly affirmed the revocation. Accordingly, the December 1, 1993, order of the circuit court is affirmed.

Affirmed.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.

CLECKLEY, J., concurs and files a concurring opinion.

CLECKLEY, Justice, concurring:

Because I believe the appellant failed to demonstrate the findings and conclusions made by the Commissioner were "clearly erroneous" or an "abuse of discretion," I concur.

From a factual and legal standpoint, this case is very difficult. Of course, there can be no doubt that Trooper Karastury had "reasonable suspicion" to stop the appellant and, while a closer call, had "probable cause" to make an arrest. The difficulty occurs, however, when we address the issue whether the Commissioner's ultimate determination of "driving under the influence" is supported by a preponderance of the evidence.

Unfortunately, the majority's opinion does not offer any insight as to the difference between these evidentiary standards. This case highlights our need to clarify the law in this area of administrative proceedings, both as to the initial burden of proof and the standard of review.

As I have consistently argued, " 'a standard of proof represents an attempt to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' " *Schlup v. Delo,* —— U.S. ——, ——, 115 S.Ct. 851, 866, 130 L.Ed.2d 808, 835 (1995), *quoting In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368, 379 (1970) (Harlan, J., concurring). Clearly, the standard of proof assigned to any adjudication should reflect the relative importance attached to the ultimate decision. Application of a "reasonable suspicion" or "probable cause" standard would give insufficient weight to the importance of taking one's driver's license. *See Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (a person cannot be deprived of his driver's license without being afforded a modicum of procedural due process). The paramount importance of avoiding the injustice of mistakenly taking the driver's license of an innocent person requires application of at least the preponderance of proof standard, which is significantly higher than the probable cause standard. I

have grave concern whether the preponderance standard was met in this case.