IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0519

_____

FILED
November 16, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EVERETT FRAZIER, COMMISSIONER OF
THE WEST VIRGINIA DIVISION
OF MOTOR VEHICLES,
Petitioner

v.

GARY L. BRAGG,
Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Louis H. Bloom, Judge
Civil Action No. 19-AA-1

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: October 13, 2020
Filed: November 16, 2020

Patrick Morrissey, Esq.                  J. Patrick L. Stephens, Esq.
West Virginia Attorney General           Underwood Law Office
Janet E. James, Esq.                     Huntington, West Virginia
Assistant Attorney General               Counsel for Respondent
Counsel for Petitioner

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "'On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.' Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996)."  Syl. Pt. 1, *Dale v. Odum*, 233 W.Va. 601, 760 S.E.2d 415 (2014).

2.      "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "'(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'"  Syl. Pt. 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

3. "'When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.' Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959)." Syl. Pt. 2, *Reed v. Haynes*, 238 W. Va. 363, 795 S.E.2d 518 (2016).

4. Pursuant to West Virginia Code § 17C-5-6 (2013), when a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, acting at the request and direction of a law-enforcement officer, withdraws blood to determine the alcohol concentration in the blood, or the concentration in the blood of a controlled substance, drug, or any combination thereof, the person tested may, at his or her own expense, have a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, of his or her own choosing, administer a chemical test in addition to the test administered at the direction of the law-enforcement officer. Upon the request of the person who is tested, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him or her.

5. "There are no provisions in either W.Va. Code, 17C–5–1, *et seq.,* or W.Va. Code, 17C–5A–1, *et seq.,* that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol, controlled

substances or drugs for purposes of making an administrative revocation of his or her driver's license." Syl. Pt. 4, *Coll v. Cline*, 202 W. Va. 559, 505 S.E.2d 662 (1998).

6.     "'Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.' Syl. Pt. 2, *Albrecht v. State,* 173 W.Va. 268, 314 S.E.2d 859 (1984)." Syl. Pt. 5, *Reed v. Hill*, 235 W. Va. 1, 770 S.E.2d 501(2015).

**HUTCHISON, Justice**:

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles ("the Commissioner" or "DMV"), seeks the reinstatement of an order revoking the driving privileges of Respondent Gary L. Bragg for driving a motor vehicle while under the influence of alcohol, controlled substances and/or drugs ("DUI"). By order entered on May 3, 2019, the Circuit Court of Kanawha County, West Virginia, affirmed the decision of the Office of Administrative Hearings ("OAH") reversing the revocation order on the grounds that the blood sample that Mr. Bragg agreed to give at the request of law enforcement officers was never tested and cannot be located, which deprived Mr. Bragg of the ability to present potentially exculpatory evidence.

Upon careful consideration of the parties' briefs and oral arguments, the appendix record, and the pertinent legal authority, and for the reasons set forth below, we reverse the circuit court's order and remand this matter for further proceedings.

## I.     Factual and Procedural Background

On January 16, 2015, while performing routine road patrol in Williamson, Mingo County, West Virginia, Senior Trooper M.J. Miller and Senior Trooper D.M. Williamson of the West Virginia State Police observed a 2006 Chevrolet Impala traveling on First Avenue. The officers observed that the vehicle was weaving, that the driver's

1

sideview mirror was defective in that it did not have glass, and that the driver was not wearing his seatbelt.  The officers watched the vehicle turn onto Second Avenue without first signaling a right turn.  The officers conducted a traffic stop of the vehicle.

Upon approaching the vehicle, Trooper Miller observed an open container of alcohol in the passenger-side floorboard. Trooper Miller made contact with the driver, identified as Mr. Bragg, and, according to the D.U.I. Information Sheet, observed that he had watery eyes, slurred speech, and the odor of an alcoholic beverage on his breath.  At Trooper Miller's request, Mr. Bragg exited his vehicle. Trooper Miller observed Mr. Bragg to be unsteady while exiting, walking to the roadside, and standing.  According to Trooper Miller, Mr. Bragg admitted that he had been drinking and had taken Suboxone prior to driving.

Trooper Miller explained and administered the horizontal gaze nystagmus ("HGN") test to Mr. Bragg.  Prior to administering that test, Trooper Miller conducted a medical assessment of Mr. Bragg's eyes, which indicated equal pupils, equal tracking, and no resting nystagmus.  Mr. Bragg had vertical nystagmus, which was indicative of a high level of impairment.   During the administration of the HGN test, Mr. Bragg's eyes displayed a lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and onset of nystagmus prior to forty-five degrees in both eyes.  Mr. Bragg refused to take the walk-and-turn and one-leg-stand tests "due to a medical condition with

2

his feet." The D.U.I. Information Sheet also reflected that Mr. Bragg "refused" the preliminary breath test.

Trooper Hall placed Mr. Bragg under arrest for DUI. Thereafter, the officers asked Mr. Bragg if he would agree to submit to a blood draw. Mr. Bragg agreed, and Trooper Williamson transported him to Williamson Memorial Hospital where a blood sample was taken by hospital personnel. Trooper Williamson then took control of the blood sample, which according to the West Virginia State Police Complaint Report, "was entered into temporary evidence." The D.U.I. Information Sheet indicated that analysis of the blood sample would be conducted by the West Virginia State Police Laboratory.

Mr. Bragg was issued an order of revocation for DUI on March 17, 2015, revoking his driving privileges for a period of one year. He timely requested an administrative hearing before the Office of Administrative Hearings (OAH) by completing the Written Objection and Hearing Request Form. Mr. Bragg marked the box on the form, "I wish to challenge the results of the secondary chemical test of the blood, breath or urine."

An administrative hearing was conducted before the OAH on February 3, 2017, at which Mr. Bragg appeared, self represented. Mr. Bragg denied that he had been drinking or that he admitted to Trooper Miller that he had been drinking. He testified that there was a passenger in the vehicle with him who was drinking from an open container of

3

beer at the time of the stop. Mr. Bragg admitted telling the officers that he had taken four milligrams of Suboxone, his prescribed dosage, approximately two hours before the stop. He denied that he was not wearing his seatbelt and that he failed to use his turn signal. Mr. Bragg could not recall whether his side mirror was defective. With regard to his performance on the HGN test, Mr. Bragg testified that the officer "put a pen in front of my eyes. I explained to him, 'Sir, I'm blind in this left eye.'" According to Mr. Bragg, that is why his left eye appeared "watery." Further, although the D.U.I. Information Sheet noted that Mr. Bragg "refused" the preliminary breath test, Mr. Bragg testified that he agreed to the test, that Trooper Miller twice attempted to administer the test using two separate devices, but that neither device worked. It was then that the officers asked Mr. Bragg if he would submit to a blood draw, to which Mr. Bragg agreed.

The D.U.I. Information Sheet was admitted into evidence and Trooper Miller testified largely consistent with the information contained therein. Though not noted on the D.U.I. Information Sheet, Trooper Miller recalled, consistent with Mr. Bragg's testimony, that there was a passenger in Mr. Bragg's vehicle at the time of the stop. Counsel for the Commissioner did not ask Trooper Miller to confirm or refute Mr. Bragg's testimony that he agreed to the preliminary breath test and that the devices were defective, or to explain, in light of this testimony, why he noted on the D.U.I. Information Sheet that Mr. Bragg "refused" this test. With regard to the HGN test, the Commissioner similarly did not attempt to refute Mr. Bragg's testimony that he was blind in his left eye and did not

4

ask Trooper Miller to account for this fact in the HGN test results noted on the D.U.I. Information Sheet, which made no reference to Mr. Bragg being blind in one eye.

Finally, the evidence showed that the blood sample that was taken from Mr. Bragg following his arrest was never tested. According to Trooper Miller, Trooper Williamson, who transported Mr. Bragg to the hospital for the blood draw, obtained custody and control of the blood sample but the West Virginia State Police Laboratory had no record of it ever being received. By the time the administrative hearing was conducted, Trooper Williamson was no longer employed with the State Police and did not testify at the hearing. Trooper Miller did not know whether the blood sample was ever sent to the State Police Lab or, if it was sent, whether it was properly logged in. Counsel for the Commissioner represented to the OAH that the blood sample was no longer in the custody of the State Police. The whereabouts of the blood sample was unknown.

On November 26, 2018, the OAH entered a Corrected Final Order in which it determined that there was evidence of the use of alcohol, drugs, controlled substances, or any combination, and that the officers lawfully arrested Mr. Bragg for DUI. However, focusing exclusively on the fact that Mr. Bragg's blood sample was taken but never tested, the OAH reversed the order of revocation. Relying on West Virginia Code § 17C-5-9

5

(2013), which provides that a driver arrested for DUI has the right to demand a blood or

breath test,[1] the OAH found that, based upon our cases construing this statute,

> individuals who voluntarily submit to a blood sample at the request of the Investigating Officer should be afforded the [s]ame due process protections as those who demand a blood test. The Investigating Officer's failure to test blood or to make blood evidence available to [Mr. Bragg] for further testing denied Mr. Bragg[] [his] statutory due process rights under W. Va. Code §17C-5-9 and is grounds for reversal of the [Commissioner's] Order of Revocation[.][2]

---

[1] West Virginia Code § 17C-5-9 (2013) provides:

> Any person lawfully arrested for driving a motor vehicle in this state while under the influence of alcohol, controlled substances or drugs shall have the right to demand that a sample or specimen of his or her blood or breath to determine the alcohol concentration of his or her blood be taken within two hours from and after the time of arrest and a sample or specimen of his or her blood or breath to determine the controlled substance or drug content of his or her blood, be taken within four hours from and after the time of arrest, and that a chemical test thereof be made. The analysis disclosed by such chemical test shall be made available to such arrested person forthwith upon demand.

[2] The OAH specifically referenced *Reed v. Hall*, 235 W. Va. 322, 773 S.E.2d 666 (2015), and *Reed v. Divita*, No. 14-1018 (W. Va. Sept. 15, 2018) (memorandum decision), both of which involved drivers who were arrested for DUI and who, unlike Mr. Bragg, demanded that a sample of blood be taken pursuant to West Virginia Code § 17C-5-9 (2013). In both cases, this Court upheld the reversal of the drivers' respective revocation orders because their blood samples were taken but never tested. We acknowledge the similarities that these cases have with Mr. Bragg's case, but decline, in the context of the present appeal, to address the Commissioner's argument that they were incorrectly decided because they were decided under West Virginia Code § 17C-5-9 rather than West Virginia Code § 17C-5-6 (2013), which statute we address *infra*.

6

(Footnote added). The OAH thus concluded that Mr. Bragg "did not commit an offense described in West Virginia Code §17C-5-2, in that the [Commissioner] did not prove by a preponderance of the evidence that [Mr. Bragg] drove a motor vehicle in this State while under the influence of alcohol, controlled substances and/or drugs on [January 16,] 2015." The order of the OAH was approved by Final Order of Chief Hearing Examiner entered on December 4, 2018.

The Commissioner appealed the decision of the OAH to the Circuit Court of Kanawha County. Also relying on West Virginia Code § 17C-5-9, the circuit court found that a driver's statutory and due process rights under this statute are not contingent upon who requests the blood test and that Mr. Bragg's

> failure to request a blood test is completely rational in light of being told by at least one – and possibly two – West Virginia State Troopers that a blood draw would be performed and his blood sample tested for alcohol. This test never occurred, nor was the sample preserved to be made available to [Mr. Bragg] for independent testing.

The circuit court affirmed the OAH's decision to reverse the revocation of Mr. Bragg's driving privileges. It is from the circuit court's May 3, 2019, order that the Commissioner now appeals.

7

## II.       Standard of Review

This Court reviews a circuit court's order in an administrative appeal under the following standard:

> "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996).

Syl. Pt. 1, *Dale v. Odum,* 233 W.Va. 601, 760 S.E.2d 415 (2014).

Further,

> [u]pon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

8

Syl. Pt. 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W.Va. Human Rights Comm'n,* 172 W.Va. 627, 309 S.E.2d 342 (1983). With these standards in mind, we address the parties' arguments on appeal.

### III. Discussion

At the heart of this appeal is the conclusion made below that Mr. Bragg's driving privileges were improperly revoked because the blood sample he agreed to give at the request of the investigating officers was never tested and, as was disclosed at the administrative hearing, forever lost. The OAH and the circuit court concluded that Mr. Bragg was thus deprived of the ability to exercise his right to have the sample independently tested. The Commissioner argues that it was error to conclude that Mr. Bragg's statutory and due process rights were violated under the provisions of West Virginia Code § 17C-5-9 because this statute applies only where a "person lawfully arrested for [DUI] . . . demand[s] that a sample or specimen of his or her blood or breath . . . be taken . . . and that a chemical test thereof be made." *Id.* in relevant part. According to the Commissioner, the circuit court erred in concluding that, under this statute and the cases construing it, one who acquiesces to a blood test has the same rights as one who requests the test under West Virginia Code § 17C-5-9 because there is no evidence either that Mr. Bragg would have requested a blood test if the officer had not asked him to submit to one, that the officers told Mr. Bragg that his blood sample would be tested, or that Mr. Bragg wished to have the sample independently tested. Finally, the Commissioner argues that there was sufficient evidence presented at the administrative hearing proving that Mr.

9

Bragg was driving while under the influence of alcohol, controlled substances and/or drugs at the time of the stop and that, as a result, his driving privileges were properly revoked.

For his part, Mr. Bragg argues that it was not error to reverse the order revoking his driving privileges because the OAH and the circuit court correctly found that his due process rights were violated by the loss or destruction of the blood sample and/or blood test results.[3] Mr. Bragg also argues that he agreed to submit to the blood test because he knew that it would exonerate him and that, contrary to the Commissioner's claim that there was "undisputed" evidence demonstrating that he was driving while under the influence of alcohol, controlled substances and/or drugs, the evidence showed that his eye appeared "watery" and that he failed the HGN test because he is blind in one eye, that he denied that he had been drinking, and that the D.U.I. Information Sheet falsely stated that he "refused" the preliminary breath test. The implication of Mr. Bragg's argument is that the information included on the D.U.I. Information Sheet was not credible.

To the extent the Commissioner argues that West Virginia Code § 17C-5-9 does not apply to the facts of this case because Mr. Bragg did not demand that a sample of his blood be taken, we agree. Rather, after he agreed and attempted to take a preliminary

---

[3] It is undisputed that Mr. Bragg's blood sample was never tested.

10

breath test on two separate devices that were broken and were apparently unable to register his blood alcohol content, it is undisputed that the investigating officers asked Mr. Bragg if he would submit to a blood draw. Mr. Bragg agreed, and Trooper Williamson transported him to Williamson Memorial Hospital where a blood sample was taken by hospital personnel. Because the blood draw was performed at the request of law enforcement officers, the provisions of West Virginia Code § 17C-5-6 (2013), rather than West Virginia Code § 17C-5-9, apply. West Virginia Code § 17C-5-6 provides:

> Only a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, *acting at the request and direction of the law-enforcement officer, may withdraw blood to determine the alcohol concentration in the blood*, or the concentration in the blood of a controlled substance, drug, or any combination thereof. . . . *The person tested may,* at his or her own expense, have a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, of his or her own choosing, *administer a chemical test in addition to the test administered at the direction of the law-enforcement officer. Upon the request of the person who is tested, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him or her.*

*Id.* in relevant part (emphasis added).[4]

---

[4] In its entirety, West Virginia Code § 17C-5-6 provides:

> Only a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, acting at the request and direction of the law-enforcement officer, may withdraw blood to determine the alcohol concentration in the blood, or the concentration in the blood of a controlled substance, drug, or any combination

Continued . . .

11

Because West Virginia Code § 17C-5-6 clearly applies to the facts of this case, the OAH and circuit court's reliance on West Virginia Code § 17C-5-9 and the caselaw construing it, was misplaced and, indeed, unnecessarily complicated the question of whether the officers' failure to test Mr. Bragg's blood sample or make it available to him to conduct additional testing violated Mr. Bragg's rights and warranted reversal of the revocation order. In *In re Burks*, 206 W. Va. 429, 525 S.E.2d 310 (1999), we acknowledged that our DUI statutes are "somewhat complex and overlapping – with

thereof. These limitations shall not apply to the taking of a breath test. In withdrawing blood to determine the alcohol concentration in the blood, or the presence in the blood of a controlled substance, drug, or any combination thereof, only a previously unused and sterile needle and sterile vessel may be utilized and the withdrawal shall otherwise be in strict accord with accepted medical practices. A nonalcoholic antiseptic shall be used for cleansing the skin prior to venapuncture. The person tested may, at his or her own expense, have a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, of his or her own choosing, administer a chemical test in addition to the test administered at the direction of the law-enforcement officer. Upon the request of the person who is tested, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him or her. No person who administers any such test upon the request of a law-enforcement officer as herein defined, no hospital in or with which such person is employed or is otherwise associated or in which such test is administered, and no other person, firm or corporation by whom or with which such person is employed or is in any way associated, shall be in any way criminally liable for the administration of such test, or civilly liable in damages to the person tested unless for gross negligence or willful or wanton injury.

12

several statutes frequently addressing the same issue[,]" pointing out that such is the case in the "'blood-test request' provisions of West Virginia Code, 17C-5-6 [1981] and -9 [1983]." *Id.* at 314, 525 S.E.2d at 433. In *Burks*, after the driver failed field sobriety tests and registered a blood alcohol content of .14 on a chemical breath test, he requested a blood test. He was transported to a local hospital where a blood test was performed. After the driver received notice that his driving privileges were revoked, he made a written request of the arresting officer for the results of and other information about the blood test. The officer advised the driver's counsel that he did not have the results and information requested, but that the information could be obtained from the hospital.

During the administrative hearing in *Burks*, it was the Commissioner's position that, because the blood test was done at the driver's request pursuant to West Virginia Code § 17C-5-9, the arresting officer did not have a duty to obtain the results. 206 W. Va. at 431, 525 S.E.2d at 312. The revocation was upheld but, on appeal, the circuit court reversed because, inter alia, the arresting officer's failure "to supply the results of the blood test is a substantial denial of due process and fair and full hearing on the issues[.]" *Id.*

On appeal to this Court in *Burks*, we considered whether the officer's failure to provide the driver with the results and other requested information about the blood test was grounds for reversing the license revocation. First, the Court discussed the role of an

13

arresting officer in the testing of blood when a driver arrested for DUI requests a blood test. *Id.* at 433, 525 S.E.2d at 314. We considered West Virginia Code § 17C-5-6, the so-called officer's "designated" test, and § 17C-5-9, the "driver-demanded" test together and in light of our State's overall DUI scheme, and declared that

> a DUI-arrested driver is deprived of a significant right if he or she requests a blood test, and is given only an opportunity to have a blood test that does not meet statutory evidentiary standards.[5] There is little point in having the right to demand a potentially exculpatory blood test, if the test that is given is not up to the evidentiary standard for blood tests set forth in the statutes.

206 W. Va. at 433, 525 S.E.2d at 314 (footnote added). We thus held in syllabus point two of *Burks* that

> [a] person who is arrested for driving under the influence who requests and is entitled to a blood test, pursuant to W. Va. Code 17C-5-9 [1983], must be given the opportunity, with the assistance and if necessary the direction of the arresting law enforcement entity, to have a blood test that insofar as possible meets the evidentiary standards of 17C-5-6 [1981].

---

[5] Specifically, West Virginia Code § 17C-5-6 provides that "[o]nly a doctor of medicine or osteopathy, or registered nurse, or trained medial technician at the place of his or her employment" may withdraw blood and may do so by utilizing "only a previously unused and sterile needle and sterile vessel" and "the withdrawal shall otherwise be in strict accord with accepted medical practices." "A nonalcoholic antiseptic shall be used for cleansing the skin prior to venapuncture." *Id.* in relevant part.

14

*Id.*[6] Further, the arresting officer's duty with respect to the results of a blood test under

West Virginia Code § 17C-5-9 was found to be as follows:

> The requirement that a driver arrested for DUI must be given a blood test on request does not include a requirement that the arresting officer obtain and furnish the results of that requested blood test.

*Id.* at 430, 525 S.E.2d at 311, syl. pt. 3. Relevant to the present appeal was our observation

in *Burks* that "[p]lacing such a requirement on the arresting officer can only be fairly read

into the statutory scheme, if the blood test is the officer's 'designated' test – and not a test

that is requested by the driver. W.Va. Code, 17C-5-6 [1981]." *Id.* at 433, 525 S.E.2d at

314.[7] We concluded in *Burks* that the driver, who was represented by counsel, could have

subpoenaed the blood test results and information about the methodology used in the test

prior to the administrative hearing given that he knew that the officer would not have them.

*Id.* We further concluded that the driver failed "to show at the DMV hearing that he had

requested the results or other information about the test from the hospital, or that the

hospital had refused to provide the results or information, or that the results or information

would have been favorable to [him]." *Id.* at 433-34, 525 S.E.2d at 314-15. As a result, we

held that the DMV was not barred from revoking the driver's license because of the failure

---

[6] Both West Virginia Code §§ 17C-5-6 and -9 were amended in 2013. The amendments do not affect our discussion of *Burks* relative to the instant matter.

[7] The Court also cautioned that "the arresting officer cannot pose an impediment to the driver's obtaining the results of and information about the test." *Id.*

of the law enforcement officer to obtain and give the results of the blood test to the driver. *See Id.*

In view of our dicta in *Burks* concerning a law enforcement officer's duty to obtain and furnish blood test results where a blood draw is performed upon a driver at the officer's request, we observe that the relevant language of West Virginia Code § 17C-5-6 states, "Upon the request of the person who is tested, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him or her." "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 2, *Reed v. Haynes*, 238 W. Va. 363, 795 S.E.2d 518 (2016) (quoting Syl. Pt. 5, *State v. Gen'l Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959)). *See also* Syl. Pt. 2, *Crouch v. W. Virginia Div. of Motor Vehicles*, 219 W. Va. 70, 631 S.E.2d 628 (2006) ("'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syllabus point 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951)."). The language of West Virginia Code § 17C-5-6 is clear and unambiguous that a law enforcement officer's duty to make available information about the test performed at the request of the officer (including blood test results) does not exist absent a request for such information by the person who is tested.

We therefore clarify and hold that, pursuant to West Virginia Code § 17C-5-6 (2013), when a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, acting at the request and direction of a law-enforcement officer, withdraws blood to determine the alcohol concentration in the blood, or the concentration in the blood of a controlled substance, drug, or any combination thereof, the person tested may, at his or her own expense, have a doctor of medicine or osteopathy, or registered nurse, or trained medical technician at the place of his or her employment, of his or her own choosing, administer a chemical test in addition to the test administered at the direction of the law-enforcement officer. Upon the request of the person who is tested, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him or her.

In this case, upon receiving the order that his driving privileges had been revoked for DUI, Mr. Bragg timely requested an administrative hearing. Aside from marking the box on the hearing request form that he "wish[ed] to challenge the results of the secondary chemical test of the blood, breath or urine[,]" it is undisputed that at no time did Mr. Bragg request any information concerning the blood withdrawn at the direction of Troopers Miller and Williamson either for the purpose of having the sample independently tested, *see* W. Va. Code § 17C-5-6 (providing that "the person tested may, at his or her own expense," arrange that a statutorily authorized professional "of his or her own choosing, administer a chemical test in addition to the test administered at the direction of

17

the law-enforcement officer") or for use otherwise at the administrative hearing. The absence of blood evidence, while acknowledged and explained at the administrative hearing, was simply not at issue in this case. We therefore conclude that the decision of the OAH and the circuit court to reverse the Commissioner's revocation of Mr. Bragg's driving privileges solely because his blood sample was not tested or made available to Mr. Bragg for independent testing was in error.[8]

The inquiry must now turn to whether, based upon the evidence presented at the administrative hearing, the Commissioner proved that Mr. Bragg was driving while

---

[8] The manner in which we have resolved this particular case should not be construed as approbation or disinterest in the failure of law enforcement to test Mr. Bragg's blood sample. Expeditious testing of a driver's blood sample after it is withdrawn is clearly contemplated by our DUI statutes. *See* W.Va. Code § 17C-5A-1(b) (2008) (requiring that a law enforcement officer investigating a person for DUI shall submit a written statement to the Commissioner within forty-eight hours of the conclusion of the investigation, which must include "the specific offense with which the person is charged applicable, a copy of the results of any secondary tests of blood, breath or urine"). *Accord Coll v. Cline*, 202 W. Va. 599, 505 S.E.2d 662 (1998). The record in this case does not suggest that law enforcement acted in bad faith, but instead, acted negligently in either failing to store the sample and/or follow through with testing. Neither scenario is acceptable because such inattentiveness could potentially be viewed as undermining the integrity of the administrative revocation procedure, the purpose of which is to protect the safety of the innocent public who use our roads and highways. *See State ex rel. Hall v. Schlaegel*, 202 W. Va. 93, 97, 502 S.E.2d 190, 194 (1998) ("This objective of removing substance-affected drivers from our roads in the interest of promoting safety and saving lives is consistent 'with the general intent of our traffic laws to protect the innocent public.'" (citation omitted)); *State ex rel. Ruddleston v. Roberts*, 175 W. Va. 161, 164, 332 S.E.2d 122, 126 (1985) ("[D]runk driving laws . . . are protective, designed to remove violat[or]s from the public highways as quickly as possible.").

18

under the influence of alcohol, controlled substances and/or drugs. Lest we forget, "[t]he principal question at the [revocation] hearing shall be whether the person did drive a motor vehicle while under the influence of alcohol, controlled substances or drugs . . . ." W. Va. Code § 17C-5A-2(e) (2015). This Court has repeatedly stated that "'[t]he absence of a chemical test does not foreclose proof by other means of intoxication as a ground for license revocation.'" *Dean v. W. Virginia Div. of Motor Vehicles*, 195 W. Va. 70, 72, 464 S.E.2d 589, 591 (1995) (quoting *Boley v. Cline*, 193 W. Va. 311, 314, 456 S.E.2d 38, 41 (1995)). As we held in syllabus point four of *Coll v. Cline*, 202 W. Va. 559, 505 S.E.2d 662 (1998),

> [t]here are no provisions in either W.Va.Code, 17C–5–1, *et seq.,* or W.Va.Code, 17C–5A–1, *et seq.,* that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol, controlled substances or drugs for purposes of making an administrative revocation of his or her driver's license.[9]

(Footnote added). *See also Hinkle v. Bechtold*, 177 W. Va. 627, 629, 355 S.E.2d 416, 418, (1987) (finding that although breathalyzer and blood tests were administered following the driver's arrest, it was proper for the Commissioner not to consider the results and to rely solely upon the arresting officer's testimony in concluding that the State had proved by a

---

[9] Syllabus point four of *Coll* "modernized" our previous holding in syllabus point one of *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984), which held similarly. *See Coll*, 202 W. Va. at 609, 505 S.E.2d at 672.

preponderance of the evidence that the driver had been driving under the influence of alcohol).

Importantly, we have also held:

> "Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol." Syl. Pt. 2, *Albrecht v. State,* 173 W.Va. 268, 314 S.E.2d 859 (1984).

Syl. Pt. 5, *Reed v. Hill*, 235 W. Va. 1, 770 S.E.2d 501 (2015).

Having concluded that the OAH erred in reversing the order of revocation based exclusively upon the fact that the blood sample withdrawn from Mr. Bragg was not tested or made available to him for independent testing, and because the OAH failed to otherwise evaluate the evidence of record, we remand this case for a determination of whether there was sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of Mr. Bragg's driver's license for driving under the influence of alcohol, controlled substances and/or drugs.

## IV. Conclusion

For the foregoing reasons, we reverse the Circuit Court of Kanawha County's order entered on May 3, 2019, and remand this case for further proceedings consistent with this opinion.

Reversed and remanded, with directions.