IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 20-0225

_____

_____

FILED

April 15, 2022

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EVERETT FRAZIER, COMMISSIONER,
WEST VIRGINIA DIVISION OF
MOTOR VEHICLES,
Petitioner Below, Petitioner

v.

DOUGLAS H. NULL,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Jennifer F. Bailey, Judge
Civil Action No. 19-AA-106

REVERSED AND REMANDED

_____

Submitted: January 7, 2022
Filed: April 15, 2022

Patrick Morrisey, Esq.
West Virginia Attorney General
Elaine L. Skorich, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Petitioner

David Pence, Esq.
Charleston, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WOOTON dissents and reserves the right to file a separate Opinion.

JUSTICE ALAN D. MOATS, sitting by temporary assignment, not participating.

**SYLLABUS BY THE COURT**

1.      "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.Code § 29A–5–4[(g) (eff. 2021)] and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong."  Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2.      "There are no provisions in either W.Va.Code, 17C–5–1, *et seq.,* or W.Va.Code, 17C–5A–1, *et seq.,* that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol, controlled substances or drugs for purposes of making an administrative revocation of his or her driver's license."  Syl. Pt. 4, *Coll v. Cline*, 202 W. Va. 599, 505 S.E.2d 662 (1998).

3.      ""'"Where there is evidence reflecting that [1] a driver was operating a motor vehicle upon a public street or highway, [2] exhibited symptoms of intoxication, and [3] had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol."  Syl. Pt. 2, *Albrecht v. State,* 173 W.Va. 268, 314 S.E.2d 859 (1984).'  Syl. Pt. 5, *Reed v. Hill*, 235 W. Va. 1, 770 S.E.2d 501 (2015)."  Syl. Pt. 6, *Frazier v. Bragg*, 244 W. Va. 40, 851 S.E.2d 486 (2020).

i

**Armstead, Justice:**

Respondent, Douglas H. Null, was arrested for driving a motor vehicle while under the influence of alcohol, controlled substances, or drugs ("DUI"), and a sample of his blood was drawn for testing. The West Virginia Division of Motor Vehicles ("DMV") revoked Mr. Null's driving privileges, but when Mr. Null appealed the revocation to the Office of Administrative Hearings ("OAH"),[1] DMV advised that the blood sample had been destroyed without testing. In light of this information, OAH reinstated Mr. Null's driving privileges, finding that the destruction of the blood sample, without testing, deprived him of potentially exculpatory evidence and violated his right to due process. On appeal, the Circuit Court of Kanawha County, West Virginia, agreed with OAH, and Petitioner, Everett J. Frazier, Commissioner of the Division of Motor Vehicles, (the "Commissioner") filed this appeal.

Based on the record before us, the arguments of the parties, and the applicable law, we find that OAH's application of the law to its factual findings was incorrect and that OAH incorrectly reversed the revocation of Mr. Null's driving privileges; therefore, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 26, 2014, a West Virginia State Trooper stopped Mr. Null for speeding. According to the DUI Information Sheet, Mr. Null's speech and departure from

---

[1] We note that OAH ceased to exist on July 1, 2021. W. Va. Code § 17C-5C-1a(d) (eff. 2020).

1

the vehicle were normal, but his eyes were bloodshot, and he was unsteady walking and standing. A marijuana bowl with residue was found in the car, and Mr. Null admitted to smoking a bowl of marijuana. When the trooper performed field sobriety tests, Mr. Null failed the horizontal nystagmus test, the walk-and-turn test, and the one-leg-stand test. The trooper took Mr. Null to a hospital for his blood to be drawn. Though a sample was taken, it was not analyzed and was later destroyed.

The DMV sent Mr. Null a revocation order, and he requested a hearing before OAH. After various continuances, OAH held an evidentiary hearing in March 2016. The trooper did not appear for the hearing because he was no longer employed by the State Police and DMV could not subpoena him. Accordingly, and over Mr. Null's objection, DMV proceeded against Mr. Null based on the DUI Information Sheet.[2]

---

[2] We have held that

> In an administrative hearing conducted by the Division of Motor Vehicles, a statement of an arresting officer, as described in W. Va.Code § 17C–5A–1(b) (2004) (Repl.Vol.2004), that is in the possession of the Division and is offered into evidence on behalf of the Division, is admissible pursuant to W. Va.Code § 29A–5–2(b) (1964) (Repl.Vol.2002).

Syl. Pt. 7, in part, *Dale v. Odum*, 233 W. Va. 601, 760 S.E.2d 415 (2014) (per curiam). West Virginia Code § 29A-5-2(b) (eff. 1964) provides that

> All evidence, including papers, records, agency staff memoranda and documents in the possession of the agency, of which it desires to avail itself, shall be offered and made a part of the record in the case, and no other factual information or

(continued . . .)

Mr. Null testified in his own defense. According to him, he had not been smoking marijuana just before the stop, and *he* was the one who requested a blood test. On cross-examination, he testified that both the possession and the DUI charges had been dismissed. He also admitted that he told the trooper that he had smoked marijuana. He claimed, however, that he said this because he did not think the trooper would believe anything else—which is why he "absolutely wanted a blood test . . . to prove that [he] hadn't smoked[] or . . . wasn't intoxicated at the time." He blamed the failed field sobriety tests on uneven pavement, his weight, lack of balance, and nervousness, though he admitted that his "weight issue" would not have affected his eyes. He also admitted that he signed the DUI Information Statement—which included an admission that he had been under the influence of marijuana—but he claimed that he had not written those remarks, that he did not read them, and that he had only "30 seconds to read" the interview section. According to him, the bowl was not his but, rather, belonged to a prior passenger who had smoked marijuana in his vehicle. Mr. Null testified: "I guess whenever he got out of the car, it come out of his pocket or something." However, there was no testimony or evidence that he requested the *results* of his blood test or requested an opportunity to perform his own test on the blood sample. Rather, he merely checked a box saying that he wanted to challenge them.

---

evidence shall be considered in the determination of the case. Documentary evidence may be received in the form of copies or excerpts or by incorporation by reference.

In August 2019, OAH entered a final order reversing the revocation. According to the order, the trooper "had reasonable grounds to believe that . . . [Mr. Null]" was DUI because he had bloodshot eyes, he was unsteady while walking and standing, he admitted to smoking a bowl of marijuana, he had a bowl (with residue) in the car, and he failed field sobriety tests. OAH also found that there was "evidence" that Mr. Null had used drugs and that he was "lawfully arrested" for DUI. OAH further found that the trooper "requested . . . [Mr. Null] submit to a blood draw" and that Mr. Null "agreed" and "did not initiate the blood draw . . . ." Nevertheless, OAH reversed the revocation, reasoning, based

on our holdings in *Reed v. Hall*[3] and *Reed v. Divita*,[4] that the State violated Mr. Null's due process rights under West Virginia Code § 17C-5-9 (eff. 2013) when it deprived him of the opportunity to present potentially exculpatory evidence as a result of his blood sample.

---

[3] 235 W. Va. 322, 773 S.E.2d 666 (2015), *abrogated by Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021). In *Hall*, we found that a driver "was denied . . . statutory and due process rights, under West Virginia Code § 17C–5–9," when the police obtained a blood sample at the driver's request but failed to have it tested. *Id.* at 332-33, 773 S.E.2d at 676-77. We have since determined, however, that *Hall* was "incorrectly decided[.]" *Talbert* at ___, 858 S.E.2d at 927. In *Talbert*, the driver requested a blood test three times, but the investigating officer refused these requests due to a mistaken belief that blood tests were not permitted when the driver was accused of driving under the influence of alcohol (as opposed to controlled substances or drugs). *Id.* at ___, 858 S.E.2d at 921-22. There was, however, abundant evidence of intoxication that OAH refused to consider and, based on *Hall*, the OAH reversed the revocation and the circuit court affirmed. *Id.* at ___, 858 S.E.2d at 920-22. On appeal, we found that OAH and the circuit court erred by not "considering the other evidence that [the driver] was driving while under the influence of alcohol" and the fact that the investigating officer "acted under a misapprehension of the law and not in bad faith." *Id.* at ___, 858 S.E.2d at 927. We identified three factors that a trier of fact "must consider" when "a driver demands a blood test pursuant to West Virginia Code § 17C-5-9, but the [blood] test is never given, a chemical analysis of the blood that is withdrawn is never completed, or the blood test results are lost." *Id.* at ___, 858 S.E.2d at 929. We identified these factors to guide the trier of fact "in determining what consequences should flow from the absence of the blood test evidence under the particular facts of the case." *Id.* at ___, 858 S.E.2d at 929-30. Thus, an investigating officer's failure to obtain the results of a blood test requested by a driver pursuant to W. Va. Code § 17C-5-9 no longer leads automatically to a conclusion that the driver's license revocation must be reversed. *Id.* at ___, 858 S.E.2d at 927-28.

[4] No. 14-1018, 2015 WL 5514209 (W. Va. Sept. 18, 2015) (memorandum decision), *abrogated by Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021). In *Divita*, we found that an "investigating officer [who had a driver's blood sample destroyed] imposed a significant impediment to [the driver]'s ability to test the blood sample and violated her statutory and due process rights." *Id.* at *3-4. *Divita* applied West Virginia Code § 17C-5-9, noting that both the "respondent [driver] and the investigating officer requested a blood test . . . ." *Id.* at *3. *Talbert* found that *Divita*, like *Hall*, was "incorrectly decided[.]" *Talbert* at ___, 858 S.E.2d at 927; *see supra* note 3.

The Commissioner[5] appealed to circuit court, and the circuit court affirmed OAH's decision. The circuit court stated that it was "hesitant to disregard the live testimony of an individual placed under oath in favor of a piece of paper[,]" and so the circuit court credited Mr. Null's testimony. However, the circuit court found that it did not matter who requested the blood test because our holding in *Divita* was not limited "to a mere determination regarding who requested the blood test." The circuit court reasoned that an investigating officer's request for a blood sample removes a driver's "impetus . . . to . . . request a blood draw" and assures the driver "that a blood draw will occur if [the driver] acquiesce[s]." The circuit court "decline[d] to hold that [a] driver's due process rights are contingent upon a race between the driver and the police officer to first request a blood draw and/or an analysis thereof." Accordingly, the circuit court agreed that Mr. Null's statutory and due process rights under West Virginia Code § 17C-5-9 were violated and found that the State's failure to test the blood sample (or make the sample available to Mr. Null for testing) "foreclosed" consideration of evidence that Mr. Null committed DUI. The Commissioner appeals from the circuit court's February 14, 2020 order.

## II. STANDARD OF REVIEW

In this appeal, the Commissioner challenges a circuit court order that affirms an administrative decision. We have held that

> [o]n appeal of an administrative order from a circuit
> court, this Court is bound by the statutory standards contained

---

[5] Adam Holley was Acting Commissioner in September 2019 when DMV's petition for judicial review was filed in circuit court.

in W.Va.Code § 29A–5–4[(g) (eff. 2021)] and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). West Virginia Code § 29A-5-4(g) (eff. 2021)[6] requires a court to reverse, vacate, or modify an administrative agency's order or decision if a petitioner's substantial rights have been prejudiced because the agency's findings, inferences, conclusions, decision, or order (1) violates constitutional or statutory provisions; (2) exceeds the agency's statutory authority or jurisdiction; (3) was made upon unlawful procedures; (4) is affected by other error of law; (5) is clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or (6) is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *See also* Syl. Pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Hum. Rts. Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983). With these standards of review in mind, we will consider the Commissioner's appeal.

### III. ANALYSIS

In this appeal, the Commissioner objects that the circuit court substituted its judgment for that of the factfinder, and showed an improper preference for testimonial evidence over documentary evidence, when it found that Mr. Null was the one who requested the blood test. According to the Commissioner, West Virginia Code § 17C-5-

---

[6] The Legislature amended West Virginia Code § 29A-5-4 after the circuit court issued its decision below, but the amendments made only stylistic changes to the portions of the statute that are relevant to this appeal.

7

9—which both OAH and the circuit court invoked in support of their decisions—does not apply unless the *driver* demands that his or her blood be drawn for testing.[7] Mr. Null responds, however, that there is no practical difference between requesting a blood test and agreeing to a blood test and argues that a citizen's due process right should not "hinge on who won the race to ask for a blood test first." We agree with the Commissioner.

### A. OAH's findings of fact are entitled to deference.

As we have consistently held, "findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." *Muscatell* at 590, 474 S.E.2d at 520, syl. pt. 1, in part. This rule flows logically from the statute, which provides that appeals in contested cases are to be decided "upon the record made before the agency" and that a circuit court may not receive testimony "except . . . in cases of alleged irregularities in procedure before the agency[] not shown in the record . . . ." W. Va. Code § 29A-5-4(f). Indeed, by statute, a reviewing court may not reverse "administrative findings" unless they are "[c]learly wrong in view of the reliable, probative, and substantial evidence on the whole record[.]" W. Va. Code § 29A-5-4(g)(5); Syl. Pt. 1, in part, *Antero Res. Corp. v. Steager*, 244 W. Va. 81, 851 S.E.2d 527 (2020) (quoting Syl. Pt. 1, in part, *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d

---

[7] In an additional assignment of error, the Commissioner asks us to reverse our holdings in *Hall* and *Divita*, arguing that our "judicially created remedy" for violations of West Virginia Code § 17C-5-9 "thwarts the purpose of the administrative sanctions for DUI and lets impaired drivers avoid license revocations by excluding all relevant evidence of DUI." However, we have already determined that "*Hall* and *Divita* were incorrectly decided[.]" *Talbert*, 245 W. Va. at ___, 858 S.E.2d at 927.

74 (2012)) (stating that "[f]indings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong").

In this case, OAH found that the trooper, *not Mr. Null*, requested the blood test, yet the circuit court accorded no deference to this finding. Rather, the circuit court observed that Mr. Null testified that he requested the blood draw, *not the trooper*, and the circuit court professed that it was "hesitant to disregard the live testimony of an individual placed under oath in favor of a piece of paper." Based upon this *hesitation*, the circuit court concluded that our decision in *Hall*—a case in which it was undisputed that the driver demanded the blood test[8]—"is directly on point" and that Mr. Null's "due process rights under W. Va. Code § 17C-5-9" were denied. We disagree with the circuit court.

Hesitation is not the same thing as a determination that OAH's finding was "[c]learly wrong in view of the reliable, probative, and substantial evidence on the whole record" as the statute and our caselaw require before a circuit court may reject an administrative finding of fact. W. Va. Code § 29A-5-4(g)(5); *Muscatell* at 590, 474 S.E.2d at 520, syl. pt. 1, in part. Furthermore, we agree that the circuit court's "hesitation" stemmed from an improper "preference for testimonial evidence over documentary evidence." *Groves v. Cicchirillo*, 225 W. Va. 474, 481, 694 S.E.2d 639, 646 (2010) (per

---

[8] *See Hall* at 332, 773 S.E.2d at 676 ("The DMV contends that the burden of proceeding from blood sample to blood test is upon Mr. Hall because he requested the blood test. On the contrary, Mr. Hall argues that the statute creates a due process right to both demand and receive a blood test . . . ." (italics removed)). Even if Mr. Null had requested the blood test, which is contrary to the OAH findings, the circuit court's reliance on *Hall* is misplaced. As we have noted herein, this Court has determined that *Hall* was incorrectly decided. *Talbert*, 245 W. Va. at ___, 858 S.E.2d at 927.

curiam). As we have clearly held, the "law recognizes no such distinction in the context of drivers' license revocation proceedings." *Ibid.* Indeed, unlike the circuit court, OAH had an opportunity to observe Mr. Null when he was testifying and evidently determined that his testimony on this issue—which directly contradicted the DUI Information Sheet— was less credible. As trier of fact, OAH had "exclusive" authority to determine Mr. Null's credibility, and the circuit court had no authority to review that credibility determination. *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). Accordingly, we find that the circuit court erred when it rejected OAH's finding that the trooper, and not Mr. Null, requested that Mr. Null's blood be drawn for testing. In addition, because we are bound by the standard of review set forth in West Virginia Code § 29A-5-4(g), and because we do not believe that OAH's finding that the trooper requested the blood test was clearly wrong, we assume that OAH's finding on this point is correct. *Muscatell* at 590, 474 S.E.2d at 520, syl. pt. 1, in part ("On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.Code § 29A–5–4[(g)] . . . .").

### B. Both OAH and the circuit court applied the wrong law.

Although we defer to OAH's finding that it was the trooper, and not Mr. Null, who requested the blood draw, we do not accord such deference to OAH's or the circuit court's conclusions of law, and we take particular exception to the circuit court's

10

conclusion that it does not matter who requested the blood test. *Muscatell* at 590, 474 S.E.2d at 520, syl. pt. 1, in part.

West Virginia Code § 17C-5-6 (eff. 2013) provides that certain medical professionals, "acting *at the request and direction of the law-enforcement officer*, may withdraw blood to determine . . . the concentration in the blood of a controlled substance, drug, or any combination thereof" and provides for an additional "chemical test" at the driver's expense and by a medical professional of his or her choice, if the driver so wishes. W. Va. Code § 17C-5-6 (emphasis added). By contrast, West Virginia Code § 17C-5-9 provides that "[a]ny *person lawfully arrested* for driving a motor vehicle in this state while under the influence of . . . controlled substances or drugs" has a "right to demand that . . . a sample or specimen of his or her blood or breath [be taken] to determine the controlled substance or drug content of his or her blood . . . and that a chemical test thereof be made." W. Va. Code § 17C-5-9 (emphasis added). Thus, Section 6 pertains to blood samples requested, in the first instance, by an *investigating officer*; Section 9 pertains to blood samples requested by a *driver*. Accordingly, we have held that when a "blood draw was performed at the request of law enforcement officers, the provisions of West Virginia Code § 17C-5-6 (2013), rather than West Virginia Code § 17C-5-9, apply." *Frazier v. Bragg*, 244 W. Va. 40, 46, 851 S.E.2d 486, 492 (2020).

As noted above, we defer to OAH's finding that the trooper, and not Mr. Null, requested the blood draw; therefore, we agree that both OAH and the circuit court erred when they concluded that the destruction of Mr. Null's blood, without testing,

11

violated his rights under West Virginia Code § 17C-5-9. Indeed, as we stated in *Bragg*, "[b]ecause West Virginia Code § 17C-5-6 clearly applies to the facts of this case, the OAH and circuit court's reliance on West Virginia Code § 17C-5-9 and the caselaw construing it, was misplaced and . . . unnecessarily complicated the question of whether the officer['s] failure to test Mr. [Null]'s blood sample or make it available to him to conduct additional testing violated Mr. [Null]'s rights and warranted reversal of the revocation order." *Id.* at 46, 851 S.E.2d at 492.

Had the circuit court correctly applied the provisions of West Virginia Code § 17C-5-6, it is clear that such statute affords no relief to Mr. Null. The statute provides that "[*u*]*pon the request of the person who is tested*, full information concerning the test taken at the direction of the law-enforcement officer shall be made available to him or her." *Ibid.* (emphasis added). As noted above, the statute also authorizes certain medical professionals to "administer" a second "chemical test" at the driver's expense. *Ibid.* However, there is no evidence that Mr. Null ever requested any information regarding the test to be performed on his blood sample and no evidence that he ever requested an opportunity to perform his own test. *See Bragg* at 48, 851 S.E.2d at 494 ("Aside from marking the box on the hearing request form that he 'wish[ed] to challenge the results of the secondary chemical test of the blood, breath or urine[,]' it is undisputed that at no time did Mr. Bragg request any information concerning the blood withdrawn at the direction of Troopers Miller and Williamson either for the purpose of having the sample independently tested . . . or for use otherwise at the administrative hearing."). Without such requests,

12

"[t]he absence of blood evidence, while acknowledged and explained at the administrative hearing, was simply not at issue in this case[,]" *ibid.*, and it was error for OAH and the circuit court to conclude otherwise and find that the destruction of his blood sample, without testing, violated his right to due process.

### C. Reversing Mr. Null's revocation was error.

Because we find no due process violation, we turn to the question of whether the Commissioner proved that Mr. Null was driving under the influence of controlled substances or drugs when he was stopped for speeding. This was, after all, the "principal question at the hearing" before OAH, W. Va. Code § 17C-5A-2(e) (eff. 2015), and "[t]he absence of a chemical test does not foreclose proof by other means of intoxication as a ground for license revocation[,]" *Boley v. Cline*, 193 W. Va. 311, 314, 456 S.E.2d 38, 41 (1995) (per curiam). Indeed, "[t]here are no provisions in either W.Va.Code, 17C–5–1, *et seq.,* or W.Va.Code, 17C–5A–1, *et seq.,* that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol, controlled substances or drugs for purposes of making an administrative revocation of his or her driver's license." Syl. Pt. 4, *Coll v. Cline*, 202 W. Va. 599, 505 S.E.2d 662 (1998).

On the contrary, we have held that

> "'[w]here there is evidence reflecting that [1] a driver was operating a motor vehicle upon a public street or highway, [2] exhibited symptoms of intoxication, and [3] had consumed alcoholic beverages, *this is sufficient proof* under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.' Syl. Pt. 2, *Albrecht v. State,*

13

173 W.Va. 268, 314 S.E.2d 859 (1984)." Syl. Pt. 5, *Reed v. Hill*, 235 W. Va. 1, 770 S.E.2d 501 (2015).

*Bragg*, 244 W. Va. at ___, 851 S.E.2d at 487, syl. pt. 6 (emphasis added). Clearly, OAH made express findings on each of these issues by a preponderance of the evidence. *First*, OAH found that "Petitioner was traveling ten (10) miles over the posted speed limit" on Route 60 in Kanawha County, West Virginia. *Second*, OAH found that Petitioner exhibited numerous signs of intoxication, including "bloodshot eyes," an "unsteady" gait, and unsatisfactory performance on "the administered field sobriety tests."[9] *Third*, OAH found that Mr. Null admitted to smoking a bowl of marijuana. In light of these findings, we conclude that Mr. Null was driving under the influence of controlled substances or drugs on May 26, 2014, and, accordingly, conclude that the circuit court erred in affirming OAH's final order that overturned the Commissioner's revocation order.

---

[9] OAH made the following particular findings: (a) that during the horizontal gaze nystagmus test, Mr. Null's eyes "showed a lack of smooth pursuit, exhibited distinct nystagmus at maximum deviation[,] and displayed the onset of nystagmus prior to an angle of forty-five (45) degrees"; (b) that during the walk-and-turn test, he "stepped off the line of walk, made an improper turn, raised his arms for balance, and took an incorrect number of steps"; and (c) that during the one-leg-stand test, Mr. Null "swayed, used his arms to balance, hopped, and was unable to keep his raised foot off the ground."

## IV. CONCLUSION

Based on the foregoing, we reverse the circuit court's February 14, 2020 order and remand this case to the circuit court for reinstatement of the Commissioner's order administratively revoking Mr. Null's driver's license.

Reversed and Remanded

with Directions.